LOWERY *vs.* THE STATE OF GEORGIA

| 72 | 649 |
| 102 | 452 |
| 72 | 649 |
| 118 | 757 |
| 72 | 649 |
| 119 | 439 |
| 72 | 649 |
| 6120 | 851 |
| 72 | 649 |
| 125 | 273 |

1. The testimony of a witness who was present when a homicide was committed, but who did not in any way participate therein, but for a time thereafter concealed the fact, is sufficient without other evidence to authorize a conviction. Such a witness is neither a principal in the first nor second degree nor an accessory either before or after the fact, and is not an accomplice, within the meaning of section 3755 of the Code.

(a.) Even if such witness had been an accessory after the fact, this would not have rendered her an accomplice, within the meaning of that term as used in section 3755 of the Code.

2. The verdict was supported by the evidence.

3. Where a motion for new trial is made by a losing party, all errors must be embraced therein; otherwise, they will be considered as having been waived, the presumption being that the court below would have corrected these errors, if he had had an opportunity.

April 15, 1884.

Criminal Law. Accomplice. Accessory. Witness.

Evidence. Practice in Supreme Court. Before Judge MERSHON. Appling Superior Court. October Term, 1883.

Fletcher Lowery was indicted for the murder of John Brimage. On the trial, only one witness testified to the actual perpetration of the homicide, a woman, called Julia Blocker or Julia Bryant. Her testimony was, in brief, as follows: She had been living with defendant, with one or two interruptions, for two or three years. At the time of the killing, she was in the woods with Brimage. Hearing a noise, she peered under the bushes, but could not tell whether it was her little girl or defendant. She told Brimage to go in another direction, while she went to meet defendant, if it were he. She got up from where she was sitting and went towards the bushes whence the noise proceeded. When she got near to them, defendant rushed out with a pistol in his hand and said, "Oh, yes, God damn you, I have caught you now, and I will kill you." He rushed at her and she ran to him; he had the pistol "in her face." She grabbed hold of him; he seized her, and fired twice at Brimage over her shoulder or under her arm, she could not say which. Defendant then threw her down. Brimage closed with defendant and threw him down. Defendant regained his feet, seized his pistol and ran. Brimage was very bloody, both shots having taken effect in his breast and abdomen. After defendant ran, Brimage started to fall; witness put her hand under his arm to sustain him, but he fell to the ground, and expired with his head on her arm. She went back to the house. On the road she met defendant near an old hedge-row with a satchel in his hand and his coat under his arm. He had changed his clothes, and left at the house those he had on when the homicide was committed, and which had blood on them. He again threatened to kill the witness, but she told him not to do so, unless he could support her two children or get somebody else to do so. She also told him not to go away; that if he ran off, they would suspect him, offer a

large reward and catch him; that he had better go home, and they would live like other people. He then told her to go to the house and take her clothes off, which she did, and he took all the bloody garments away. She went back to the body of Brimage and searched it. She found only two pieces of tobacco and a closed pocket knife. When she returned to the house, defendant cursed her, and told her that he had instructed her not to go out of the yard. He asked if she had found any money in Brimage's pocket, and took the knife and threw it away. She asked him if he was going to leave Brimage there, and said it would have to be told by somebody. He inquired if she were going to tell it. She replied, no, but somebody would. Defendant went back and threw the body further down towards the branch, dragging it by the legs. He then told her not to leave the lot, and went to get a settlement with a man who owed him. After the homicide, defendant said he was sorry for it. She responded that it was too late. He told her to keep her mouth shut; that she was " as deep in the mud as he was in the mire." She denied that she had done anything, but he told her that she would better keep silent. She told him that she could not stay there after what he had done. Defendant furnished her with the money to leave, and she left the day after the homicide and went to a railroad station a few miles away. It was understood between them that she was to stay until defendant sent for her. When the body of the murdered man was found, the sheriff went for her as a witness, and she at once informed him of the entire transaction.

Another witness testified that, on the preliminary examination, the evidence of Julia Blocker was substantially the same as on the present trial, and that after it was delivered defendant admitted that it was true; and this occurred while the witness (who appears to have been an officer of the law) was putting him in a cell.

The evidence for the defendant tended principally to

show that on the committing trial Julia Blocker had sworn that, when she met defendant at the old hedge-row after the homicide, she stopped him and told him not to go away; that if he did, they would suspect him, and offer a large reward for him; and that she told him to come back, and she would go, and they would not suspect him so quickly, and there would be nobody to tell who did it; and that she left the next morning. It was also shown that Julia Blocker was a woman of easy virtue, and had a husband, but had been living with defendant as if she were his wife; that she was also a woman of very violent passions; that the murdered man was missing until the Wednesday following the homicide; that the sheriff went to where Julia Blocker was, to inquire about it; and that she then told him that she had not seen Brimage, although she had an appointment with him that morning at a specified place where they were in the habit of meeting, and that a stick was stuck up there where they could find the place. The whistle of the train blew just then, and they hurried towards it. She followed behind the witness who narrated these facts, talking, but he did not hear her.

The defendant in his statement merely made a general denial of all knowledge of the murder, and stated that he was working in another place from that in which the difficulty occurred.

The jury found the defendant guilty. He moved for a new trial on the following, among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court, on request, refused to charge as follows: "If you believe from the evidence that the witness, Julia Blocker, after full knowledge of the killing of the deceased, concealed it from the magistrate, and harbored, protected or assisted defendant, she thereby made herself an accomplice with defendant in the commission of the crime; and you cannot convict the prisoner on her evidence alone, unless she is corroborated by some other

witness, or witnesses, or a chain of circumstances going to convict the prisoner of the crime committed; and those corroborating circumstances necessary to dispense with another witness must be such as to connect the prisoner with the offense; and it is not sufficient that the witness is corroborated as to the time, place and circumstances of the transaction, if there be nothing to show any connection of the prisoner therewith except the statement of the accomplice; the circumstances of the corroboration must be such as in themselves tend to fix the crime on the prisoner, though the accomplice may not have mentioned the fact at all."

(3.) Because the court charged as follows : " An accomplice is one who participates in the commission of a crime. The testimony of an accomplice, uncorroborated by other facts or circumstances to corroborate it, would not be sufficient upon which to find a co-defendant guilty. If you find she was an accomplice, that would go to her credibility, and you would have to look for other evidence or circumstances, or you would not be authorized to act on that and find the defendant guilty. In order, however, to find that she was an accomplice, you must be satisfied from the evidence that she participated in the crime and that she intended to do so."

(4.) Because the court charged as follows : "If you find, after going through the evidence, that she was an accessory after the fact, then that would also go to her credibility."

The motion was overruled, and defendant excepted.

The only ground of error assigned in the bill of exceptions was the overruling of the motion. In argument other errors were suggested, but the court declined to pass upon them, as stated in the third division of the decision

McLENDON & GRAHAM; SPENCER & WAY, for plaintiff in error.

C. ANDERSON, attorney general; G. B. MABRY, solicitor general, for the state.

BLANDFORD, Justice.

The main question in this case is, whether the testimony of a witness who was present when the homicide was committed, but who did not in any way participate therein, but who for a time thereafter may have concealed the fact, is sufficient, without other evidence, to authorize a conviction, under section 3755 of the Code.

This question must be answered in the affirmative. The witness, Julia Blocker, was not even an accomplice within any sense of that term. She did not participate in the crime as actual perpetrator of the offense, or as principal in the second degree. She was not accessory before the fact, and from the facts set forth, she was not even accessory after the fact. Code, §§4305, 4306, 4307, 4308. Even if she had been an accessory after the fact, this would not have rendered her an accomplice, within the meaning of that term as used in §3755 of the Code.

The charge requested by the plaintiff in error upon the subject of the testimony of an accomplice was properly declined by the court. And the charge as given by the court was fully as favorable as the accused had any right to expect, and under the facts of this case, we think more so.

2. The evidence submitted on the trial warranted the finding of the jury.

3. There were other points insisted on by the counsel for plaintiff in error, but we find, upon an examination of the motion for new trial, that they are not embraced therein. Where a motion for new trial is made by a losing party, all errors complained of must be embraced therein, otherwise they will be considered as having been waived; any other practice would operate unjustly to the court below, the presumption being that he would have corrected those errors, if he had had an opportunity.

Let the judgment of the court below stand affirmed.