GUETLING *v.* STATE OF INDIANA.

GUETLING *v.* STATE OF INDIANA.

[No. 24,599, 24,600. Filed October 26, 1926. Rehearing denied January 7, 1927.]

1. CRIMINAL LAW.—*Conviction of being accessory before the fact to the commission of a felony.*—One charged with being an accessory before the fact to the commission of a felony (§2028 Burns 1926, §2095 Burns 1914) cannot be convicted unless the state proves that he committed one of the acts enumerated in the statute. p. 723.

2. CRIMINAL LAW.—Mere presence of one not shown to have participated in the commission of a felony is not sufficient to sustain conviction for encouraging the commission of the felony. p. 723.

3. CRIMINAL LAW.—*Admissibility of testimony in prosecution for being accessory before the fact to the commission of a felony.*—

In a prosecution for encouraging another to commit a felony by operating a still for the manufacture of intoxicating liquor, testimony that, six hours after the still had been dismantled, the defendant delivered a sack of sugar to the place where the still had been in operation could only be admitted to throw light on acts prior to or at the time of the commission of the felony. p. 723.

4. CRIMINAL LAW.—To actively countenance and support the doing of a criminal act by another is to "encourage" it within the meaning of §2028 Burns 1926, §2095 Burns 1914. p. 724.

5. CRIMINAL LAW.—*Exceptions to instructions must be disregarded on appeal where all instructions given are not set out in appellant's brief.*—Any question on the instructions must be disregarded on appeal where appellant did not set out in his brief all the instructions given, as required by cl. 5 of Rule 22 of the Supreme and Appellate Courts, as amended January 1, 1924. p. 725.

6. CRIMINAL LAW.—Section 2028 Burns 1926, §2095 Burns 1914, declares and defines the public offense of being an accessory before the fact to the commission of a felony, and, therefore, an affidavit stating the facts in the language of the statute is sufficient. p. 725.

7. CRIMINAL LAW.—A criminal statute defining an offense so as to convey to a person of ordinary intelligence an adequate description of the evil intended to be prohibited will not be stricken down for uncertainty or regarded as insufficient to warrant prosecution thereunder. p. 725.

8. INDICTMENT AND AFFIDAVIT.—An affidavit charging the accused with being an accessory before the fact under §2028 Burns 1926, §2095 Burns 1914, which alleges that the accused unlawfully counseled, encouraged, hired and commanded another to commit a felony, *held* sufficient. p. 726.

9. CRIMINAL LAW.—*Punishment for offense of accessory before the fact is sufficiently prescribed.*—Section 2028 Burns 1926, §2095 Burns 1914, creating and defining the offense of accessory before the fact of the commission of a felony, fixes the punishment for the offense by providing that one convicted thereof shall "suffer the same punishment and penalties as are prescribed for the punishment of the principal." p. 727.

10. STATUTES.—The title of the act of 1923 (Acts 1923 p. 107) relating to stills and distilling apparatus covered the use of stills in the manufacture of intoxicating liquor, the purposed use of the stills being a matter properly connected with the subject. p. 727.

From Gibson Circuit Court; *Robert C. Baltzell,* Judge.

Joe and Elbert Guetling were separately convicted of being accessories before the fact to the commission of a felony by another by using a still in the manufacture of intoxicating liquor, and they separately appealed. The two appeals were consolidated for the purposes of an opinion. *Affirmed as to the defendant first named and reversed as to defendant last named.*

*A. E. Gore* and *Thomas W. Lindsey*, for appellants.

*U. S. Lesh*, Attorney-General, *Arnet B. Cronk* and *Carl Wilde*, for the State.

MYERS, C. J.—By affidavit, each of these appellants was charged, and although separately tried, each was convicted of inducing another to commit a felony by the use of a still, in violation of §1, Acts 1923 p. 107. The rulings on their motions for a new trial and in arrest of judgment are separately assigned as error. These appellants separately brought to this court a record presenting practically the same questions supported by like arguments and authorities. For the purposes of an opinion and disposition in this court, the cases are consolidated.

It appears from each of the records at bar that on October 11 or 12, 1923, one Leonard Mack erected a tent in a cornfield some seven or eight miles west of Owensville in Gibson county, and therein set up two distilling outfits, one of twenty-five-gallon and the other of thirty-gallon capacity, for the manufacture of whisky. He had there materials sufficient to make sixteen barrels of mash, which he prepared the next day and allowed to ferment seven or eight days when he began to "cook it off." On the twenty-second day of the same month, at about 2:30 in the afternoon, the sheriff of Gibson county and four other persons visited the tent where they found Mack, the distilling appa-

ratus, and thirty or thirty-five gallons of whisky. The sheriff arrested Mack, took possession of and moved away the whisky, a portion of the apparatus, and emptied the barrels containing the mash. Mack was taken to Princeton and placed in jail, and did not afterwards return to the tent. Later in the day, about 6:30 p.m., the sheriff, his deputy and four other persons returned to the neighborhood of the tent where they, with one or two other persons, remained until about 8 or 8:30 o'clock in the evening, when both appellants, Joe in the lead, appeared, each carrying a sack containing one hundred pounds of corn sugar, an article said to be used in the manufacture of whisky. In the car on the side of the road were four 100-pound sacks of sugar and four oil stove wicks. The sheriff arrested each of these appellants and obtained from them at that time statements or admissions concerning their connection with the unlawful enterprise. Two of the persons who accompanied the sheriff testified that they understood Elbert to admit to the sheriff that he had made one other trip, and, in the opinion of one of these witnesses, two other trips to the tent and returned with twenty gallons of whisky. Four other witnesses, also bystanders, and the sheriff, testified that they heard no such admissions from Elbert. On the contrary, all of the testimony on the subject of Elbert's admissions, other than the two, was to the effect that he insisted that he had never been at the tent before; had no former knowledge of the camp, and that he was there only at the solicitation of his brother to take a ride with him into the country, and that his only participation or connection with the making of the liquor was the carrying of a sack of sugar that evening from his brother's automobile down to the tent at his brother's request. There is no other evidence in any manner connecting Elbert

with Mack or the whisky making. During the talk between the sheriff and the Guetlings, Joe, in response to questions by the sheriff, admitted that he had made two trips from Evansville, his home, to the tent, and on each trip he had obtained twenty gallons of liquor for which he had paid Mack $5 a gallon. One witness testified that about two or three weeks before Mack was arrested, he saw Joe and Mack on the road in a big touring car, Mack driving, about a mile from where the tent was located and driving in that direction.

Mack pleaded guilty to the charge of manufacturing whisky and was a witness for the state at the trial of each of these appellants. He testified that he transferred the entire distilling outfit, materials for making whisky, and the tent in a truck to the place where the same was found. Prior to that time, he had purchased a Hudson touring car, and being unable to make the payments as they become due, and while he was engaged in this whisky activity, the seller of the car brought him and Joe Guetling together to whom he sold his equity in the car for 600 pounds of sugar to be delivered to him at his tent, and $200, of which $150 was paid in cash; that he was not acquainted with Elbert and never saw him prior to October 22, 1923, at about 10:30 o'clock at night, when he was brought to jail and locked up with the witness. There was evidence also tending to show that Elbert was a steady and industrious automobile mechanic. Joe did not testify at either trial, but his brother Elbert testified in his own defense covering his activities during the months of September and October, and explaining how he came to be at the tent on the evening of his arrest. He was twenty-five years old, and his story was reasonable and consistent with unintentional wrongdoing.

The affidavit, among other things, charged that on or about October 22, 1923, and before the alleged fel-

ony was committed, these appellants "did then

1. and there unlawfully and feloniously counsel, encourage, hire and command the said Leonard Mack to do and commit the said felony." This affidavit is based on §224, Acts 1905 p. 584, §2028 Burns 1926, which provides that "Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment or affidavit," etc. Hence, to warrant a conviction of either of these appellants, it was incumbent upon the state to introduce evidence to prove, or from which the jury might reasonably infer, that these appellants, for the purpose of procuring Mack to commit the particular felony alleged, did at least one of the acts mentioned in the statute and stated in the affidavit. *Thompson* v. *State* (1920), 189 Ind. 182, 125 N. E. 641.

The evidence brought to our attention by Elbert in his appeal we have considered carefully and have been forced to the conclusion that we ought not to let

2, 3. a conviction stand on the mere statement of two bystanders out of seven to a conversation that they understood Elbert to say that he had been at the tent once and possibly twice before, when the person questioning him and four others, equally competent, equally creditable, alike interested, alike situated, and with equal opportunity for knowing the same fact, testified positively and directly that they heard no such admission from Elbert. All agree that both of these appellants were being questioned by the sheriff at the same time, and to our mind, from all the circumstances present, Joe made admissions the two witnesses evidently attributed to Elbert. However this may be, and regardless of the thought suggested by our consideration of the former visit testimony, as applied to Elbert, it, at most, only tended to prove that he was present

at a time when the offense of which he was charged was committed by Mack. Thus, as a question of law, the rule is that the mere presence of one not shown to have participated in the unlawful act is not sufficient to support the fact as here, "counsel, encourage, hire and command," essential to his conviction of the offense committed by another. *Carey* v. *State* (1924), 194 Ind. 626, 144 N. E. 22; *Frye* v. *State* (1926), 197 Ind. 615, 151 N. E. 728. Nor would it be sufficient to warrant a conviction when supplemented by the testimony of his presence at the camp with his brother and the delivery of a sack of sugar six hours after the camp had been dismantled and the offense fully consummated. This latter testimony was admissible only for the purpose of throwing some light upon his acts prior to or during the time of the commission of the alleged felony. *Wade* v. *State* (1880), 71 Ind. 535.

As to Joe, the inference to be drawn from all the circumstances pertaining to the furnishing of the sugar to Mack; his presence with Mack in the car; his frequent visits to the tent; and his furnishing a market for a large quantity of the manufactured products, when considered together, strongly tend to warrant the conclusion that Joe was encouraging Mack to commit the offense for their mutual benefit. The admission of Joe that upon each of two occasions, he had taken to Evansville twenty gallons of the Mack manufactured whisky, for which he paid him $5 a gallon, and sold it for $7 a gallon, might justify an inference that he was disposing of it at a profit and therefore interested in the continuance of its making. Such an inference suggests a motive, and a motive for the doing of a criminal act is usually quite influential in fixing criminal responsibility. Moreover, to actively countenance and promote by support the doing of an act by another is to encourage it. We therefore con-

clude that the verdict in the case of Elbert is unsustained by the evidence, but in the case of Joe, the evidence is sufficient.

The state makes the point that appellant's brief is not so prepared as to present any question on the instructions given or those refused. This contention must be sustained. Clause 5, Rule 22 of the Supreme and Appellate Courts, as amended January 1, 1924, provides that, "When error is predicated on the giving or refusing of instructions, the statement must recite the instructions that were given." We learn from appellant's brief that the court gave of its own motion nineteen written instructions, and that appellant tendered and requested the court to give seven, all of which were refused. The statement in appellant's brief mentions only two of the instructions given and three of the ones tendered and refused, but none of them, whether given by the court or refused, purport to be copies. But if they were copies, still there would be a failure to comply with the rule to set forth all of the instructions given, and hence any question on the instructions must be disregarded. *Beyer* v. *Safron* (1926), 84 Ind. App. 512, 151 N. E. 620; *Stone* v. *Travelers Ins. Co.* (1925), 84 Ind. App. 243, 149 N. E. 454; *Robinson* v. *State* (1916), 185 Ind. 119, 113 N. E. 306.

Finally, appellant Joe insists that the affidavit upon which he was tried and convicted fails to state facts constituting a public offense, and hence it was error to overrule his motion in arrest of judgment. He claims that one who counsels, encourages, hires and commands another to commit a felony must be charged, prosecuted and convicted as a principal, for the reason that there is no statute creating a crime known as an accessory. We cannot agree with this contention. The statute, §2028 Burns 1926, *supra,*

upon which this affidavit is predicated, recites certain acts which, if done, will subject the doer thereof to a fixed punishment. It, therefore, to a common intent, declares and defines what facts shall constitute a public offense. While a criminal statute is to be strictly construed (*Kistler* v. *State* [1921], 190 Ind. 149, 129 N. E. 625), yet when "the offense is so defined," although in general terms, "as to convey to a person of ordinary intelligence an adequate description of the evil intended to be prohibited," it will not be stricken down for uncertainty or regarded as insufficient to rest a prosecution for its violation. *Smith* v. *State* (1917), 186 Ind. 252, 256, 115 N. E. 943.

The affidavit charging Mack with having committed the alleged felony is not questioned. Then follows the statement that on October 22, 1923, each of these 8. appellants, "did then and there unlawfully and feloniously counsel, encourage, hire and command the said Leonard Mack to do and commit the said felony in the manner and form aforesaid, so the affiant upon his oath aforesaid, does say and charge, that the said Elbert Guetling and Joe Guetling did commit the crime aforesaid in the manner and form aforesaid, contrary," etc. An indictment less specific and certain in charging an offense under the same statute, §2028 Burns 1926, *supra,* was held sufficient. *Pottsi* v. *State* (1924), 194 Ind. 597, 143 N. E. 673. It seems to us that the language of the foregoing affidavit, when fairly interpreted, is sufficiently certain and specific to inform these appellants of the nature of the charge they would be called upon to meet. The felony mentioned was the use of a still for the manufacture of intoxicating liquor in violation of the laws of this state. That was the crime with which the principal defendant was charged, and the one and only felony to which the affidavit referred. While these appellants might have been

charged as principals without stating the acts relied on by the state to show the actual commission of the offense by another, and that they merely counseled and encouraged its perpetration, yet this court has held that, under such charge, such acts might be proved. *Brunaugh* v. *State* (1910), 173 Ind. 483, 90 N. E. 1019.

Under the above specification in support of the motion in arrest, counsel insist that the statute, §2028 Burns 1926, *supra,* fails to provide a place of 9, 10. punishment; that the title of the act concerning stills and distilling apparatus, ch. 33, Acts 1923 p. 107, violates Art. 4, §19, Constitution of Indiana, in that the subject of the act is "intoxicating liquor" which is not referred to in the title. There is no merit in either of these assertions. For, in case of a conviction for a violation of §2028 Burns 1926, *supra,* such convicted person "shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal." That is to say, in the instant case, the punishment fixed by law (§1, Acts 1923 p. 107) for the principal defendant is thus, by reference, fixed as the punishment for a convicted accessory before the fact. *Guetling* v. *State* (1925), 196 Ind. 643, 148 N. E. 146. Referring to chapter 33, the subject of that act is plainly stated in the title as "stills and distilling apparatus." The purposed use of the stills is a matter properly connected with the subject, in that the possession of stills is made unlawful for use in the manufacture of intoxicating liquor in violation of the law of this state. *Cyrus* v. *State* (1924), 195 Ind. 346, 145 N. E. 497.

The affidavit stated a public offense, and the motion in arrest was properly overruled. *Pottsi* v. *State, supra; Territory* v. *Guthrie* (1888), 2 Idaho 432, 17 Pac. 39; *People* v. *Rozelle* (1888), 78 Cal. 84; *State* v. *Fraser* (1922), 105 Ore. 589; *Commonwealth* v. *Devine*

(1891), 155 Mass. 224; *Hartshorn* v. *State* (1876), 29 Ohio 635; 31 C. J. 778, §341.

Judgment reversed as to Elbert Guetling, with instructions to sustain his motion for a new trial, and in the case of Joe Guetling, the judgment is affirmed.