No. 48,313

State of Kansas, *Appellee*, v. Margaret A. Smolin, *Appellant.*

(557 P. 2d 1241)

Opinion filed December 11, 1976.

*William D. Mize,* district public defender, argued the cause and was on the brief for the appellant.

*James L. Sweet,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from a jury conviction of aggravated battery (K. S. A. 21-3414). The victim was defendant Margaret Smolin's ten-month-old daughter, Golda.

On the morning of July 26, 1975, defendant brought her daughter to Asbury Hospital in Salina, Kansas. Golda was treated at the hospital by Dr. Frederick Gans, who observed the child had lost contact with its environment and had incurred superficial bruises over the body, burns on the top and bottom of both feet, a burn on the left shoulder and swelling of the right leg above the knee. A spinal tap was performed which indicated injury to the central nervous system. X-rays revealed fractures to the right lower thigh and left wrist. Because he felt the injuries could not have been accidental and he did not expect the child to live, Dr. Gans contacted the police.

When the hospital staff questioned defendant concerning the origin of the injuries, she stated the burn on the back was sunburn. She could not account for the other burns or injuries.

Officer Richard Edgington, of the Salina police, began the investigation of the case. When he arrived at the hospital he observed the child and was advised by a nurse that the baby had a broken arm and leg, and brain damage. She also informed him the attending physician believed the injuries were intentionally inflicted. After being advised of her *Miranda* rights, defendant told Edgington that she and a Robert Berkowitz had sole control and custody of the injured child. Defendant was then transported to the Salina police station for further questioning.

Defendant made several oral and written statements to police. She told police she and her child had been living with Berkowitz. She often left Golda in his care while she worked or ran errands. Until July 17, 1975, her daughter was normal and healthy. On that date she noticed a burn on Golda's back and shoulder before she went to work. When she questioned Berkowitz about it, he stated it was a sunburn Golda received when he took her to the lake. When defendant came home from work later that day she noticed burns on the baby's feet.

On July 25, defendant left Golda with Berkowitz when she went to work. After she got off work she ran errands and returned home at about 5:00 p. m. She and Berkowitz left the apartment about 6:30 p. m., leaving the baby unattended until they returned home about 12:30 a. m. Because the two had been arguing, Berkowitz went into the apartment first and defendant remained outside. A few minutes later Berkowitz called to defendant and asked her to come upstairs because the child was moaning and in "shock." They slapped Golda, sprinkled cold water on her, and pumped her arms and legs to revive her. When these efforts failed, defendant wrapped the baby in a blanket and fell asleep holding Golda in her arms. The next morning she took the child to the hospital.

Defendant told one officer she did not take Golda to the hospital that night because she wanted to wait until morning to see if the child was better. She told another officer she was afraid to go to the hospital because she couldn't explain the injuries.

Although defendant denied any knowledge of the cause of the injuries, she told police the bruises might have been caused by the child's bumping into the side of the crib, the head injuries might have been caused when the child fell off the bed on July 23, and the broken arm and leg might have been inflicted when they tried to revive the child early in the morning of July 26.

Defendant was charged with aggravated battery. Prior to trial defendant filed a motion to suppress her statements. After a full hearing, the trial court denied the motion. The statements were admitted into evidence at trial over defendant's objection.

At trial, Dr. Gans testified extensively concerning the nature and cause of the injuries. He stated the shoulder burn could not have been caused by the sun, but only by the direct application of heat. The burns on the feet were caused by the application of a hot object, probably a cigar, a cigarette lighter or some hot metal object. The broken arm and leg were caused by the use of considerable force and could not have been caused by pulling the limbs back and forth in the manner defendant described to police. The head injury was not accidental. He surmised the fractures and head injuries were less than forty-eight hours old and were inflicted at the same time. The burns occurred sometime earlier.

Defendant took the stand and told essentially the same story she told police. In addition, she stated she did not suspect her child was being abused. She did not know what caused the injuries

but thought the child might have been burned by a cigar while crawling on the floor.

Defendant first challenges her conviction because she was charged with aggravated battery but tried as having aided and abetted the principal, presumably Robert Berkowitz. She claims this practice failed to apprise her of the evidence she would be required to meet at trial and was prejudicial.

By statute and case law this jurisdiction has long held that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. (K. S. A. 21-3205; *State v. Jackson*, 218 Kan. 491, 543 P. 2d 901; *State v. Williams & Reynolds*, 217 Kan. 400, 536 P. 2d 1395; *State v. Ingram*, 211 Kan. 587, 506 P. 2d 1148; *State v. Campbell*, 210 Kan. 265, 500 P. 2d 21; *State v. Ogden*, 210 Kan. 510, 502 P. 2d 654; *State v. Edwards*, 209 Kan. 681, 498 P. 2d 48; *State v. Ridge*, 208 Kan. 236, 491 P. 2d 900; *State v. Sharp*, 202 Kan. 644, 451 P. 2d 137; *State v. Jackson*, 201 Kan. 795, 443 P. 2d 279, cert. denied, 394 U. S. 908, 22 L. Ed. 2d 219, 89 S. Ct. 1019.) Moreover, defendant's argument that she should have been charged in the information with aiding and abetting the aggravated battery rather than with the substantive offense has been rejected by this court. (*State v. Motor*, 220 Kan. 99, 102, 551 P. 2d 783; *State v. Curtis*, 217 Kan. 717, 723, 538 P. 2d 1383; *State v. Turner*, 193 Kan. 189, 392 P. 2d 863.)

Defendant further contends there was insufficient evidence for the trial court to instruct the jury on aiding and abetting. Her argument rests primarily on the assumption that the state failed to identify a principal. If this were true defendant's authorities might prevail, but we believe the record amply identifies the principal. Evidence of defendant's actions was sufficient for an instruction on aiding and abetting. In a case similar to the instant case, the Supreme Court of Indiana, in *Mobley v. State*, 227 Ind. 335, 85 N. E. 2d 489 (1949), stated:

"Even if the jury had not believed that violence by the mother caused or helped to cause the child's death, it reasonably could have found that she aided and abetted Fagan in causing it. We have a statute which provides that every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command or otherwise procure a felony to be committed, may be charged by indictment or affidavit, and tried and convicted in the same manner as if he were a principal. Section 9-102, Burns' 1942 Replacement; *White v. State* (1941), 219 Ind. 290, 296, 37 N. E. 2d 937. It is true that the mere presence of an accused at the time and place

of the crime alleged is not sufficient to make such accused guilty, but if from the facts and circumstances surrounding defendant's presence at the time and from defendant's conduct it appears that defendant's presence did in fact encourage someone else to commit the act, guilt may be inferred. *Schaffer v. State* (1930), 202 Ind. 318, 325, 173 N. E. 229.

"Actively to countenance and support the doing of a criminal act by another is to encourage it, within the meaning of the aiding and abetting statute last above referred to, *Guetling v. State* (1926), 198 Ind. 718, 724, 153 N. E. 765, and a person encouraging the commission of a felony is guilty as a principal and subject to prosecution and conviction the same as the principal, under the statute last referred to. *Simpson v. State* (1925), 195 Ind. 633, 637, 146 N. E. 747. While it is true that the mere presence of a person at the scene of a crime is insufficient to constitute him a principal therein, in the absence of anything in his conduct showing a design to encourage, incite, aid, abet or assist in the crime, the trier of the facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom that he assented to the commission of the crime, lent his countenance and approval thereto and thereby aided and abetted it. *People v. Smith* (1945), 391 Ill. 172, 62 N. E. 2d 669, 673; *State v. Fox* (1904), 70 N. J. L. 353, 57 Atl. 270. This, it seems to us, is particularly true when the person who fails to interfere owes a duty to protect as a parent owes to a child. See *Thornton v. State* (1904), 119 Ga. 437, 46 S. E. 640, 641-2." (pp. 343-44.)

(See also, *People v. Henson*, 33 N. Y. 2d 63, 304 N. E. 2d 358, 349 N. Y. S. 2d 657 [1973].)

We believe the reasoning of the Indiana court is sound and the rule stated in *Mobley* should be adopted in this state. Applying *Mobley* here, we find the evidence indicates defendant was aware of the presence of suspicious burns and bruises on her child for several days prior to hospitalization on July 26. She did not take any action to discover the cause of the injuries or to prevent their reoccurrence. The child was in the sole custody and control of defendant and Berkowitz. Even when she discovered the child was in "shock," she failed to seek medical aid for nearly ten hours. When authorities questioned her about the cause of the injuries defendant could offer no explanation; however, she became disturbed when hospital authorities told her they had called police. Defendant's explanation for the injuries was contrary to the facts according to Dr. Gans. There was sufficient evidence for the jury to receive an aiding and abetting instruction.

Defendant submits the jury was exposed to color photographs which were so shocking and repetitive as to prejudice her rights. Nine photographs were taken by Salina police on July 26 and introduced into evidence at trial. Exhibit 1 showed the burn on the

shoulder, which defendant said was a sunburn. Exhibit 2 showed bruises on the left arm. Exhibits 3 and 6 showed bruises on the child's face. Exhibits 4, 5, 7, and 10 showed the circular burns to the top and bottom of the child's feet. Exhibit 9 showed bruises on the legs and buttocks.

This court has repeatedly held that the admission of photographs is not error when it assists the jury in understanding the nature, degree and extent of injuries, the violent nature of the crime, or a physician's testimony. (For recent cases, see *State v. Steward*, 219 Kan. 256, 547 P. 2d 773; *State v. Watkins*, 219 Kan. 81, 547 P. 2d 810; *State v. Sully*, 219 Kan. 222, 547 P. 2d 344; *State v. Jones*, 218 Kan. 720, 545 P. 2d 323; *State v. Anicker*, 217 Kan. 314, 536 P. 2d 1355; *State v. Randol*, 212 Kan. 461, 513 P. 2d 248.) The pictures were used by the attending physician to describe the nature of the injuries he treated. Furthermore, the nature and cause of the injuries were controverted and it was incumbent on the jury to determine whether they were the product of accidental or intentional acts. We have viewed the photographs and find no prejudicial error in their admission.

Defendant's third point alleges the jury was exposed to evidence of prior crimes and was not given a limiting instruction. (K. S. A. 60-455.) Evidence of the alleged crimes was introduced during the state's direct questioning of defendant's mother, who testified as to burns and other injuries she had observed. In response to defendant's objection, the state told the court it was proceeding on the theory all the injuries were part and parcel of one continuous battery. The witness then told the jury the child appeared to be normal until July 16 or 17 when she noticed the burn on the shoulder. She questioned defendant, who told her it was a sunburn. Later, defendant told her mother Berkowitz said it was a sunburn, but it really was not. On July 19, defendant's mother noticed burns on the child's feet when she went to pick up the child from Berkowitz. On July 24 she again saw the child and it was normal, but had facial bruises. On July 26, she saw new injuries when she and defendant took Golda to the hospital.

Defendant's argument fails. First, the state proceeded on the theory all the injuries constituted one crime although composed of separate acts. A similar practice was approved by this court in *State v. Fahy*, 201 Kan. 366, 440 P. 2d 566. There, the defendant was convicted of child abuse and torture. The state introduced evidence of abusive acts spanning two days. Because the dates

were set out as specifically as possible in the information and the evidence was the same as presented at preliminary hearing, the defendant was not prejudiced.

Even if the state had not proceeded on the single battery theory, this court has allowed evidence otherwise relevant in a criminal prosecution to be admitted when it shows a crime other than that charged. (*State v. Rasler*, 216 Kan. 582, 533 P. 2d 1262; *State v. Crowe*, 207 · Kan. 473, 486 P. 2d 503.) Since the testimony was admitted independent of K. S. A. 60-455, a limiting instruction was not required. (See, *State v. Burnett*, 221 Kan. 40, 558 P. 2d 1087.

Defendant next complains the trial court erred in denying her motion to suppress her in-custody statements because they were the product of an illegal arrest. The argument fails for two reasons. First, based upon the facts obtained by Officer Edgington at the hospital, he had probable cause to believe a felony had been committed by defendant and the arrest was proper. (*State v. Curtis*, supra; *State v. Boyle*, 207 Kan. 833, 486 P. 2d 849.) Second, courts have not held that all statements made during an unlawful detention are per se excluded. They are excluded only if they are involuntary and a product of the detention. (*State v. Barry*, 216 Kan. 609, 533 P. 2d 1308; *State. v. Freeman*, 195 Kan. 561, 408 P. 2d 612, cert. denied, 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981; *Walton v. United States*, 334 F. 2d 343 [10th Cir. 1964], cert. denied, 379 U. S. 991, 13 L. Ed. 2d 612, 85 S. Ct. 706.)

The trial court held a hearing and determined the statements were voluntary, and defendant had been properly advised of her *Miranda* rights, which were intelligently and knowingly waived. That ruling is binding on this court if it is supported by substantial competent evidence. (*State v. Barry*, supra at 616; *State v. Wilson*, 215 Kan. 28, 523 P. 2d 337.) We think the record amply supports such a finding. Defendant was advised of her rights on several occasions. Each officer testified she indicated she understood those rights and was willing to speak with them. On several occasions she requested to speak with certain officers. She did not request an attorney. Officers testified she was never threatened. They offered her food and drink; when she refused it, they allowed her mother to bring food to her. The trial court did not err in admitting her statements.

As defendant's fifth and sixth points, she alleges her motion for

acquittal was erroneously denied and there was insufficient evidence to sustain her conviction.

The rule for assessing a motion for acquittal was set forth in *State v. Gustin,* 212 Kan. 475, 510 P. 2d 1290, where this court held:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt *is* a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." (Syl. 3.)

(See also, *State v. Holloway,* 219 Kan. 245, 547 P. 2d 741; *State v. Rasler,* supra; *State v. Williams & Reynolds,* supra.)

In *State v. Roy,* 203 Kan. 606, 455 P. 2d 512, we stated:

"In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence and if the essential elements of the charge are sustained by any competent evidence the conviction stands. . . ." (p. 607.)

(See also, *State v. Faulkner,* 220 Kan. 153, 551 P. 2d 1247; *State v. Martin,* 206 Kan. 388, 480 P. 2d 50; *State v. Trotter,* 203 Kan. 31, 453 P. 2d 93; *State v. Scoggins,* 199 Kan. 108, 427 P. 2d 603; *State v. Shaw,* 195 Kan. 677, 408 P. 2d 650.)

A review of the record discloses sufficient evidence to support the conviction.

The judgment of the lower court is affirmed.