# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-2355

_____

| | | |
|---|---|---|
| Fernando Recio-Prado, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order |
| | * | of the Board of Immigration Appeals. |
| Alberto Gonzales, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

No. 05-3555

_____

| | |
|---|---|
| Fernando Recio-Prado, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| Alberto Gonzales, Attorney General | * |
| of the United States, | * |
| | * |
| Respondent. | * |

_____

Submitted: June 16, 2006
Filed: August 2, 2006

_____

Before SMITH, HEANEY, and GRUENDER, Circuit Judges.

HEANEY, Circuit Judge.

Fernando Recio-Prado petitions for review of the order of removal issued by the Board of Immigration Appeals (BIA), and the BIA's denial of his motion to reopen and remand the matter to an immigration judge (IJ). We deny the petitions.

## BACKGROUND

Recio-Prado, a twenty-seven-year-old native and citizen of Mexico, was admitted to the United States as a legal permanent resident on October 29, 1996. On March 20, 2001, he was convicted of the offense of criminal discharge of a firearm at an occupied building or vehicle, in violation of Kansas Statute section 21-4219(b), and received a suspended sentence of eleven months of incarceration. The Department of Homeland Security (DHS) subsequently began removal proceedings against Recio-Prado on January 9, 2002, alleging that he had been convicted of an aggravated felony[1] and a firearms violation.[2] DHS subsequently amended its allegations, including the charge that Recio-Prado had been convicted of a crime of moral turpitude.[3] As factual support for each of these charges, the DHS alleged that Recio-Prado had been convicted of the Kansas offense of criminal discharge of a firearm at an occupied building or vehicle.

In proceedings before the IJ, Recio-Prado admitted all factual allegations, including his prior state court conviction. He further admitted that he was removable because his offense constituted a firearms violation, but denied that it was either an

---

[1] 8 U.S.C. § 1227(a)(2)(A)(iii).

[2] 8 U.S.C. § 1227(a)(2)(C).

[3] 8 U.S.C. § 1227(a)(2)(A)(i).

aggravated felony or a crime of moral turpitude. Following a hearing held on February 23, 2004, the IJ held that Recio-Prado's offense of conviction qualified as a crime of moral turpitude, since it involved the malicious firing of a weapon into an occupied dwelling. Recio-Prado appealed to the BIA, which affirmed the IJ's decision on April 21, 2005.

On July 21, 2005, Recio-Prado filed a motion with the BIA seeking to reopen and remand his case to the IJ. He asserted that the IJ erred in determining that Recio-Prado's offense involved moral turpitude, because Recio-Prado had pled guilty only to aiding and abetting the shooting, yet the IJ treated him as if he were the principal. The BIA denied the motion as untimely. Recio-Prado filed petitions for review of the BIA's order of removal and denial of his motion to reopen, which we consolidated for purposes of this appeal.

## ANALYSIS

We have jurisdiction to consider the "legal question" of whether Recio-Prado's Kansas conviction qualifies as a "crime of moral turpitude." Loeza-Dominguez v. Gonzales, 428 F.3d 1156, 1157 (8th Cir. 2005). "Moral turpitude" is left undefined by statute, subject to the interpretation of DHS. Solano-Chicas v. Gonzales, 440 F.3d 1050, 1055 (8th Cir. 2006). Thus, "[w]hen reviewing the IJ's statutory mandate to deport aliens convicted of crimes involving moral turpitude, we must accord deference to the BIA's rulings, and will uphold its decision so long as it is reasonable." Reyes-Morales v. Gonzales, 435 F.3d 937, 944 (8th Cir. 2006).

Our initial inquiry is whether the alien's statute of conviction "defines a crime in which moral turpitude necessarily inheres." Chanmouny v. Ashcroft, 376 F.3d 810, 812 (8th Cir. 2004) (quoting In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999) (per curiam)). If that is the case, "then the conviction is for a crime involving moral turpitude for immigration purposes, and our analysis ends." Id. If the statute

criminalizes conduct that involves moral turpitude as well as conduct that does not, we look to the record of conviction to determine what precise provision of the statute applied to the alien. Id. at 813.

The decision below indicates that the IJ considered the statute to be one in which moral turpitude inhered. "Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." In re Ajami, 22 I. & N. Dec. at 950. It is an act that is intrinsically wrong, "so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude." Id.

We agree with the IJ that moral turpitude inheres in Recio-Prado's statute of conviction. To sustain his conviction under the Kansas statute, the state was required to prove Recio-Prado engaged in "the malicious, intentional and unauthorized discharge of a firearm at a dwelling . . . in which there is a human being." Kan. Stat. § 21-4219(b). Maliciously and intentionally firing a weapon into an occupied dwelling strikes us as undoubtedly malum in se; even without the statute's prohibition on such conduct, it is wrong.[4]

Recio-Prado also complains that the BIA unfairly denied his motion to reopen the record and remand. He acknowledges that it was not timely filed. See 8 C.F.R. § 1003.2(c)(2) (stating that a petitioner has ninety days following the final administrative decision in which to file a motion to reopen). We agree with Recio-Prado, however, that this is not a jurisdictional bar to relief. The regulations themselves grant the BIA discretion to reopen or reconsider "at any time" a case in

---

[4]Recio-Prado asserts that the IJ erred in misstating the facts underlying his conviction. Even assuming there was any misstatement, it is of no import, because moral turpitude inheres in the statute of conviction. Thus, we look to the *fact of* conviction, not the *facts underlying* the conviction.

which it has issued a decision. 8 C.F.R. § 1003.2(a); cf. Etchu-Njang v. Gonzales, 403 F.3d 577, 585 (8th Cir. 2005) (noting that BIA has reopened matters to consider ineffective assistance of counsel claims despite tardy filing by the alien).

Although the BIA had jurisdiction to reopen Recio-Prado's case, it did not abuse its discretion in refusing to do so. Recio-Prado's motion to reopen was based on the view that his conviction did not qualify as a crime of moral turpitude. In support of his motion, he asserted that he was only convicted as an aider and abetter to the shooting, and sought to introduce the transcript from his plea hearing to establish that fact.

We doubt the plea transcript qualifies as evidence that "was not available and could not have been discovered or presented at the former hearing," a condition necessary before the BIA may grant the motion to reopen. 8 C.F.R. § 1003.2(c)(1). Moreover, such facts were already before the IJ: the administrative record contains Recio-Prado's plea petition, and states that "Mr. Recio-Prado is pleading as an aider and abetter." (Admin. Rec. at 144.) The administrative record does not, however, contain any evidence whatsoever that Recio-Prado argued before the IJ or the BIA that he ought to be treated differently because he was merely an aider and abetter. Lastly, we question whether the plea transcript satisfies the materiality requisite of a motion to reopen. See 8 C.F.R. § 1003.2(c)(1). The BIA has often treated an accessory the same as the principal for the crime of moral turpitude inquiry. See In re Short, 20 I. & N. Dec. 136, 138 n.1 (BIA 1989); accord State v. Smolin, 557 P.2d 1241, 1245 (Kan. 1976) ("By statute and case law this jurisdiction [has] long held that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal."). Recio-Prado has not suggested any convincing reason for the BIA to have deviated from that course here.

## CONCLUSION

Recio-Prado contests the order of removal issued by the BIA. As he was convicted of a crime of moral turpitude, the order was properly issued. He further argues that he was entitled to have his case reopened so that he could present additional evidence to the IJ. That decision was left to the discretion of the BIA, and we find no abuse in its refusal to do so. Accordingly, we deny his petitions.

_____