No. 21,782.

THE STATE OF KANSAS, *Appellee*, v. B. J. PATTERSON, J. A. GREGOIRE, *Appellants,* et al.

SYLLABUS BY THE COURT.

1. MANSLAUGHTER—*Operation on Female to Produce an Abortion—Death.* An information charging that the defendants operated upon a woman "pregnant with vitalized embryo," with the intent to produce an abortion, does not charge an offense under a statute penalizing such act where the woman is "pregnant with a quick child."

2. SAME—*Instruction Not Misleading.* A statement in the charge to the jury that each of them should be led, from the testimony, to a clear conviction of the defendant's guilt, is held from the context to have meant that each juryman should be led to a clear belief that the defendant was guilty before a verdict of conviction could be returned.

3. SAME—*Instruction—Weight of Expert Evidence.* An instruction that the weight of expert testimony concerning the condition of an anatomical exhibit depended on whether or not a substitution or alteration had been effected, is held not to warrant a reversal on the ground that it singled out and made unduly emphatic that feature of the matter.

4. SAME — *Evidence — Statements of Deceased Nonprejudicial.* In a prosecution for producing an abortion, it is held that the admission of evidence that the subject of the operation, who died as a result thereof, had stated that she was pregnant and was going to see the defendants on that account, was nonprejudicial because not inconsistent with the defense made, whether or not it was technically competent.

Appeal from Pratt district court; GEORGE L. HAY, judge. Opinion filed June 7, 1919. Affirmed.

*S. B. Amidon, S. A. Buckland, Glenn Porter,* all of Wichita, *Howard J. Hodgson,* of Eureka, and *D. E. McCrory,* of Pratt, for the appellants.

*Richard J. Hopkins,* attorney-general, and *E. R. Barnes,* county attorney, for the appellee; *William Barrett, L. G. Turner,* both of Pratt, and *S. M. Brewster,* of Topeka, of counsel.

The opinion of the court was delivered by

MASON, J.: B. J. Patterson and J. A. Gregoire were convicted of manslaughter in the fourth and first degrees, respectively, and appeal. The defendants are physicians, and the

charge against them is that they operated upon Floris Lewis to produce an abortion, thereby causing her death. She died following an operation at their hands, but they assert that its purpose was to remedy conditions brought about by a venereal disease from which she was suffering, and that she was not pregnant.

1. Complaint is made of the failure of the court to give an instruction under the section of the statute making it manslaughter in the second degree to administer a drug to a woman "pregnant with a quick child" with intent to destroy it, or to employ an instrument with that purpose, where the death of the child or mother ensues therefrom. (Gen. Stat. 1915, § 3376.) Such an instruction would not have been proper under the information, which did not charge that Floris Lewis was "pregnant with a quick child." It alleged that she was "pregnant with vitalized embryo," and the contention is made that this expression is equivalent to that of the statute. "Vitalized," however, merely means endowed with life. Any human embryo which is not dead is "vitalized." It is no less endowed with life before reaching the stage of development known as quickening than after. A woman is said to be pregnant with a quick child, or quick with child, when the motion of the fetus becomes perceptible—usually about the middle of the period of pregnancy. (1 C. J. 312, note 39 [a] ; 1 R. C. L. 76.) Not only was this condition not pleaded, it was not indicated by the evidence.

2. In the course of the charge the court used this expression: "Each individual [juryman] should be led, from the testimony, to a clear conviction of the guilt of the defendant." This language is complained of as tending to lead the jury to believe that the court thought the evidence to be so clear that a conviction should be had. It occurred, however, in a paragraph discussing the degree of certainty necessary to warrant a verdict of guilty, and in the same sentence with a specific statement that there could be no conviction so long as any juror entertained a reasonable doubt of the defendants' guilt. The context showed plainly that what was meant was that, in order to find the defendant guilty, each juryman should be led to a clear conviction of his guilt.

3. At a post-mortem examination of the body of Floris Lewis conducted by the defendants the uterus was removed

The State v. Patterson.

and placed in a jar of alcohol. At the trial they produced what they represented to be the same jar and contents, together with evidence that its appearance showed that the uterus was not that of a woman who had been pregnant. The court told the jury, in substance, that in order for the testimony of experts concerning the appearance of the uterus to have weight with them, they must first find, from the evidence, that no substitution had been made—that the organ produced was the one taken from the body, and that it had not been tampered with, but had been exhibited to the witnesses in the same condition as when first removed. This instruction is complained of, not as involving any incorrect statement of a principle of law, but as objectionable because it singled out for comment one particular feature of the testimony, and suggested to the jury that the court itself suspected substitution or alteration. Granting that the specific reference to the question of the genuineness of the exhibit was open to the objection stated, it would not in itself justify a reversal. In *The State v. Tawney*, 81 Kan. 162, 105 Pac. 218, which is cited in behalf of the defendants in this connection, the conviction was set aside on account of the erroneous exclusion of evidence, the materiality of which was enhanced by the instruction there considered. Here, in the cross-examination of one of the defendants, the possibility that they had substituted another uterus for that of Floris Lewis was dwelt upon at some length. If they had done so, the testimony of expert witnesses to whom the spurious exhibit was shown was so obviously immaterial that there was perhaps little occasion to direct the jury's special attention to the matter; but, on the other hand, the very obviousness of the point makes it unlikely that the verdict was influenced by reference to it.

4. Several witnesses, including the mother of Floris Lewis, were permitted to testify that Floris had told them that she was pregnant and was going to go to one of the defendants for an operation on that account. This evidence is objected to as incompetent—as being pure hearsay. It has often been said by courts and text-writers that such testimony is admissible. (1 C. J. 325, 326; 1 R. C. L. 84; Note, 35 L. R. A., n. s., 1084; *People v. Fritch*, 170 Mich. 258.) Some of the decisions on which these statements are founded were influ-

enced by special circumstances not here present, and it may be that even if the usual rule favors the admission of such evidence it is not of universal application. Because of the particular facts of the present case, we think no prejudicial error was committed in this regard, whatever view is taken of the general principle.

Floris was married October 12, 1916. Her husband deserted her November 10. On December 6, 1916, she left her home at Forgan, Okla., with her mother, and went to Pratt, Kan., where she put herself in the hands of the defendants. An operation of some character was performed on her by them December 8. She died December 20. Her mother testified that her menstruation had ceased in November; that she had morning sickness; that her face was full and her breasts enlarging—that she had the usual symptoms of pregnancy. The further statement that her daughter had said she was pregnant added nothing material to this. Matters had not progressed far enough so that the daughter could be ·sure of her condition—she could merely give her opinion. There was a direct issue of veracity between the state's witnesses and the defendants' on the subject. If the mother's ·story of the proceedings at the hospital was true, her daughter was pregnant, and the defendants discussed the matter with her on that basis.

If incompetent evidence was admitted to the effect that Floris had said that she was pregnant and was going to the defendants on that account, it was not prejudicial, because that fact was as consistent with the story told by the defendants as with the theory of the prosecution. Their own version of the affair was that, while Floris was really suffering from gonorrhœa, and knew it, she had led her mother and neighbors to believe that she was pregnant, and that she was going to Pratt to see the defendants on that account, her purpose being to conceal the fact that she had a. venereal disease. The defendants' testimony was to the effect that the mother supposed her daughter to be pregnant until the day of the operation—that her daughter had said that she did not want her mother to know that she had gonorrhœa—that "the people at Forgan thought she was in a family way and her mother knew no difference." On cross-examination of Floris' father,

the defendants brought out as original evidence the fact that she had told him she was pregnant. In view of these considerations, we regard it as clear that, even assuming the incompetence of evidence that Floris had said that she was pregnant, no substantial prejudice could have resulted to the defendants from its admission.

The judgment is affirmed.