State v. Keester.

---

No. 26,221.

THE STATE OF KANSAS, *Appellee*, v. C. C. KEESTER, *Appellant*.

### SYLLABUS BY THE COURT.

CRIMINAL LAW — *Verdict* — *Responsiveness to Crime Charged.* Where a defendant is expressly and singly charged with the felony of causing the death of a woman by committing an abortion on her while she was pregnant with a quick child, with the unlawful intent to destroy such child, which offense is specifically defined and denounced by the crimes act (R. S. 21-410) as manslaughter in the second degree, the defendant so charged cannot be convicted of the crime of manslaughter in the first degree; and a verdict, judgment and sentence against the defendant for the latter offense are void.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed June 12, 1926. Reversed.

*John W. Adams,* of Wichita, and *G. A. Stultz,* of Kansas City, Mo., for the appellant.

Constitutional Law, 12 C. J. p. 887 n. 38.  Criminal Law, 16 C. J. pp. 1103 n. 68, 1303 n. 52.  Homicide, 29 C. J. pp. 1161 n. 83, 1163 n. 7; 30 C. J. p. 428 n. 18.

*C. B. Griffith,* attorney-general, *W. A. Smith, Roland Boynton,* assistant attorneys-general, *W. A. Blake,* county attorney, *H. C. Castor* and *John W. Wood,* assistant county attorneys, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant was convicted of manslaughter in the first degree for having caused the death of a young woman, Lorean Franklin, by divers means which he feloniously used upon her to destroy an unborn quick child with which she was pregnant.

Defendant assigns various trial errors, the most serious of which relates to the fact that while he was charged with an offense which by statute is defined as manslaughter in the second degree and which carries a punishment of penal servitude for a term of three to five years, he was convicted of the offense of manslaughter in the first degree for which the penalty is five to twenty-one years in the penitentiary.

The information, which was in one count, alleged that—

"Dr. C. C. Keester, . . . at and within the county of Sedgwick, in the state of Kansas . . . on the 31st day of July, A. D. 1924, did then and there unlawfully, feloniously, willfully, intentionally and knowingly make an assault in and upon Lorean Franklin, a pregnant woman with a quick child, with certain medicine, drugs, substance and instruments, and did use and employ certain drugs, instruments and other means with the intent thereby to destroy such quick child; that the destruction of such child was not necessary to preserve the life of the said Lorean Franklin, and that the same had not been advised by a physician as being necessary for that purpose; that the informant is unable to give a more particular description of said medicine, drugs, substance, instruments and other means used by the said Dr. C. C. Keester, as aforesaid; that the same were used with the intent thereby to destroy the aforesaid unborn quick child; that the destruction of the said quick child ensued from the said means employed and by reason of the acts of the said Dr. C. C. Keester, heretofore alleged; that from the effects of said assault made by the said Dr. C. C. Keester, as aforesaid, the said Lorean Franklin did languish, and languishingly did live until on or about August 3, 1924, when the said Lorean Franklin at and within the county of Sedgwick and state of Kansas aforesaid, did then and there die from the effects of said assault inflicted as aforesaid; and that the said Dr. C. C. Keester, in the manner and form and by the means aforesaid, at and within the county of Sedgwick and state of Kansas, aforesaid, did then and there unlawfully, feloniously, willfully and intentionally kill and murder her, the said Lorean Franklin, contrary to the form of the statute," etc.

The pertinent section of the crimes act which denounces this offense reads:

"Every person who shall administer to any woman pregnant with a quick child any medicine, drug, or substance whatsoever, or shall use or employ any

State v. Keester.

instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by a physician to be necessary for that purpose, if the death of such child or mother thereof ensue from the means employed, shall be guilty of manslaughter in the second degree." (R. S. 21-410.)

The statute which defines the penalty for manslaughter in the second degree reads as follows:

"Persons convicted of manslaughter in the first and second degrees shall be punished as follows: *First,* if in the first degree, by confinement and hard labor for a term not less than five years nor more than twenty-one years; *second,* if in the second degree, by confinement and hard labor for a term not less than three nor more than five years." (R. S. 21-421.)

It will be noted that, measured by the severity of the punishment imposed, the offense of manslaughter in the first degree is one of much greater gravity than that of manslaughter in the second degree. And it will also be observed that the information in this case was drawn in conformity with the terms of R. S. 21-410 quoted above, and the facts pleaded constituted a charge of manslaughter in the second degree. On what theory, then, can the conviction and sentence imposed on Doctor Keester for the graver offense than that charged against him be upheld?

Counsel for the state argue in this wise: The crimes act provides:

"Every physician or other person who shall willfully administer to any pregnant woman any medicine, drug, or substance whatsoever, or shall use or employ any instrument or means whatsoever, with intent thereby to procure abortion or the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by a physician to be necessary for that purpose, shall upon conviction be adjudged guilty of a misdemeanor, and punished by imprisonment in the county jail not exceeding one year, or by fine not exceeding five hundred dollars, or by both such fine and imprisonment." (R. S. 21-437.)

And the statute defining manslaughter in the first degree reads thus:

"The killing of a human being without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration or attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases when such killing would be murder at the common law, shall be deemed manslaughter in the first degree." (R. S. 21-407.)

It is the state's theory that Doctor Keester's original offense, that of committing an abortion on Lorean Franklin, was a misdemeanor, and that the unintentional death of the woman which was brought about through the perpetration of that misdemeanor operated to

render him guilty of manslaughter in the first degree. But here the defendant was expressly charged with an offense which the statute denounces as manslaughter in the second degree. Moreover, it is unthinkable in this enlightened age that one expressly accused of a specific offense which on conviction would subject him to a punishment of three to five years in the penitentiary can be convicted of a much graver offense and sentenced to the penitentiary for an indeterminate term of five to twenty-one years.

In 16 C. J. 1103 it is said:

"The verdict must be responsive to and cover the offense charged in the indictment or information. Defendant cannot be charged with one crime and convicted of another merely because the latter is developed out of the proof, which fails to establish the crime charged in the indictment."

In the same treatise, page 1303, it is said:

"The judgment and sentence must be responsive to and based upon the offense with which defendant is charged. Thus on a verdict or a plea of guilty of a particular crime the court must impose the punishment provided for that crime, and a sentence for an offense with which defendant was not charged is void."

Under our statute regulating procedure in criminal cases, a person accused of a more serious offense may be convicted of a less serious offense where the essential elements of the lesser crime are included in those constituting the graver crime (R. S. 62-1022), but neither statute, precedent nor principle known to our jurisprudence can be cited to support the converse of that rule. We do not overlook the concluding language of the charge against the defendant which alleges that "in the manner and form and by the means aforesaid" the defendant did "feloniously . . . kill and murder her the said Lorean Franklin." The "manner and form" and "means aforesaid" had already been stated in the information, and its closing verbiage was merely the legal conclusion of the pleader, and contributed nothing towards altering or raising the degree of the crime charged from that of manslaughter in the second degree to manslaughter in the first degree. (1 Wharton on Criminal Procedure, 10th ed., § 196.) There is, of course, ample authority for the doctrine that where the allegations of the information are sufficiently comprehensive to warrant a conviction of one of several offenses of varying degrees of gravity, the defendant may be convicted of any offense warranted by the evidence so long as it is fairly included within the terms of the charge. Nor was there anything in the evidence or circumstances, so far as disclosed by the record, to

State v. Keester.

hinder the prosecuting attorney from charging defendant in separate counts with the offenses of manslaughter in the first and second degrees. But here the single charge in the information was that a felonious assault was made upon Lorean Franklin, "a woman pregnant with a quick child," with the intent "thereby to destroy such quick child." That intent "to destroy the aforesaid unborn quick child" is reiterated in the information, and it is further charged "that the destruction of the quick child," as well as the death of the mother, "ensued from the means aforesaid and by reason of the acts of the said Dr. C. C. Keester." The state, of course, is bound by its pleadings, and the recitals in the information just quoted bar consideration of any theory that there was no quick child, or that the mother was not pregnant with a quick child, or that Doctor Keester had no intent to destroy a quick child, or that his offense was that of unintentionally bringing about the death of the woman through the unlawful perpetration of that sort of abortion which another section of the crimes act defines as a misdemeanor. (2 Wharton's Criminal Procedure, 10th ed., § 1398.)

It thus becomes too clear for cavil that this case cannot be brought within the reasoning of the cases where abortions of women pregnant with "vitalized embryos" not developed to the state of quickening have been unlawfully committed and followed by fatal consequences to human life. The verdict and judgment in this case will have to be set aside.

It is needless to consider the other errors assigned. We do note the curious anomaly in our crimes act in this respect: One who willfully commits any act intended to cause an unlawful abortion of a woman, in the early stages of her pregnancy, before the quickening of the fœtus, is guilty of manslaughter in the first degree if the woman dies as a result of such unlawful act (State v. Harris, 90 Kan. 807, 136 Pac. 264; State v. Patterson, 105 Kan. 9, 181 Pac. 609; and see, also, State v. Watson, 30 Kan. 281, 1 Pac. 770), while a similar unlawful act perpetrated on a woman in the later stages of her pregnancy, after the quickening, "when she is pregnant with a quick child," says the statute, is guilty of manslaughter in the second degree if the woman dies as a result of such unlawful act. However, as was remarked in State v. Harris, supra, this anomaly is one which concerns the legislature, not the judiciary; and we must expound and apply the statutes as we find them.

The judgment of the district court is reversed and the cause remanded for a new trial.