No. 38,342

THE STATE OF KANSAS, *Appellee,* v. ANNAS WHITLOW BROWN, *Appellant.*

(236 P. 2d 59)

Opinion filed October 6, 1951.

*A. D. Weiskirch,* of Wichita, argued the cause, and *Don Shaffer* and *Abraham Weinlood,* both of Hutchinson, were with him on the briefs for the appellant.

*John R. Alden,* of Hutchinson, argued the cause, and *Harold R. Fatzer,* attorney general, *Fred C. Preble* and *John Fontron,* both of Hutchinson, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appeal is from a conviction of manslaughter in the first degree.

The information charged the defendant killed deceased, a woman pregnant with a vitalized embryo, by using on her certain instruments with the intent to procure an abortion, which was not necessary to preserve her life. The facts are about as follows:

Deceased was found dead on a bed in the basement of defendant's home; there was evidence of her having made an appointment with defendant; that she was four or five months pregnant; that her water bag and fetus were normal and her placenta showed evidence of instrumentation with the tear being ragged and with bits of tissue hanging; there was evidence of a bronchial condition; there was also evidence that defendant was at her home when deceased came there; that she called the ambulance for her; that she had expected deceased to come to her home; that she told the officers conflicting stories as to whereabouts in her house the death occurred; that she told a woman who had taken care of girls upon whom defendant had performed abortions before, that deceased was five months pregnant and would soon be wanting to stay with the witness. This witness also testified defendant called her at her home

and told her deceased was sick and asked her to come to defendant's home. A doctor testified:

"His opinion is that the tearing of the placenta was by a metal instrument which managed to pass the water bag without puncturing it, that the result of this separation would have been an enormous gush of blood, which would be exceedingly difficult to control, that there would have been sufficient loss of blood to lead to a condition of shock. . . . His opinion is that the cause of death was loss of blood from attempted abortion, and that the bronchial condition would not be sufficient to cause death without the loss of blood and consequent shock, because a person normally would be able to cough up the material in the chest."

Defendant was charged under G. S. 1949, 21-407. It provides as follows:

"The killing of a human being without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration or attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases when such killing would be murder at the common law, shall be deemed manslaughter in the first degree."

There was no negligence charged in this case, so we shall consider the statutes as though it provided that the killing of a human being without a design to effect death, by the act of another, while the other was engaged in the perpetration or attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases when such killing would be murder at common law, should be deemed manslaughter in the first degree.

The theory of the state was that deceased was killed by defendant while defendant was attempting to perpetrate the crime of abortion. The pertinent statutes dealing with abortion are two. G. S. 1949, 21-437, provides as follows:

"Every physician or other person who shall willfully administer to any pregnant woman any medicine, drug, or substance whatsoever, or shall use or employ any instrument or means whatsoever, with intent thereby to procure abortion or the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by a physician to be necessary for that purpose, shall upon conviction be adjudged guilty of a misdemeanor, and punished by imprisonment in the county jail not exceeding one year, or by fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The other is G. S. 1949, 21-410. It provides as follows:

"Every person who shall administer to any woman pregnant with a quick child any medicine, drug, or substance whatsoever, or shall use or employ any instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall

have been advised by a physician to be necessary for that purpose, if the death of such child or mother thereof ensue from the means employed, shall be guilty of manslaughter in the second degree."

The information alleged that deceased was pregnant with a "vitalized embryo." The defendant moved that the state be compelled to make the information definite and certain by stating whether deceased was pregnant with a "quick child" at the time the acts were committed by defendant. This motion was overruled. The defendant then moved to quash the information. This motion was overruled. At the conclusion of the state's evidence the defendant's demurrer to it was overruled. The specifications of error are, error in overruling defendant's motion to make definite and certain and to quash the information; in admitting evidence over objection of defendant; overruling defendant's demurrer to plaintiff's evidence; in refusing to give defendant's requested instructions in the instructions given; permitting counsel for the state to make improper and prejudicial remarks in his closing argument; and in receiving the verdict and sentencing the defendant because the verdict was contrary to the law and to the evidence. The defendant's motion for a new trial was on seventeen grounds covered by the specifications of error.

The defendant argues first the court erred in overruling defendant's motion to make definite and certain and to quash the information. As noted, this prosecution was for a violation of G. S. 1949, 21-407. The information charged deceased was pregnant with a "vitalized embryo." The argument of the defendant that her motion to quash the information should have been sustained is that causing an abortion of a woman pregnant with a "quick child" is a separate and distinct offense carrying a lesser penalty than that of causing an abortion of a woman pregnant with a "vitalized embryo" and the information did not with certainty apprise the defendant of the nature of the charge against her.

The prosecution is for a violation of G. S. 1949, 21-407. The abortion statutes enter this case because the information charged that this killing was by the act of defendant while she was engaged in the perpetration of an attempt to perform an abortion on deceased. Such is the offense denounced by G. S. 1949, 21-437. This is the theory upon which the prosecution was carried and upon which it was submitted to the jury.

The inclusion of the term "vitalized embryo" in the information was actually surplusage. The information need only have used the

term "pregnant woman" to state the offense of manslaughter in the first degree, in violation of G. S. 1949, 21-407. Thus the act of attempting to cause an abortion would have been an attempt to perpetrate a crime, not a misdemeanor. Actually the term "vitalized embryo" is not used in any of our statutes. In G. S. 1949, 21-410, the term "pregnant with a quick child" is used, and in G. S. 1949, 21-437, simply the term "pregnant woman." Had the information contained the term "pregnant woman" rather than "pregnant with a vitalized embryo" it would have stated a violation of G. S. 1949, 21-407, for a violation of G. S. 1949, 21-437, is such a crime not amounting to a misdemeanor as is contemplated by G. S. 1949, 21-407.

We said in *State v. Patterson*, 105 Kan. 9, 181 Pac. 609, that the term "vitalized embryo" used in an information meant simply endowed with life.

Surely where pregnancy has advanced to the state where the expectant mother might be said to be quick with child, the child is endowed with life.

The information we have here charged a crime that would be murder at common law. (See *State v. Harris*, 90 Kan. 807, 136 Pac. 264.) There the defendant was charged with a violation of what is now G. S. 1949, 21-407. The theory upon which the information was drawn was just the theory upon which the information in this case was drawn, that is, that defendant had attempted to perform an abortion in violation of what is now G. S. 1949, 21-437. We held:

"An information alleging the use of a certain instrument to procure the abortion or miscarriage of a woman pregnant with a vitalized embryo, not necessary or medically advised to be necessary to preserve her life, resulting in her death, charges a crime which would be murder at the common law, and which is manslaughter in the first degree under section 12 of the crimes act. (Gen. Stat. 1909, § 2500.)"

Defendant next argues the trial court erred in overruling her demurrer to the state's evidence. She points out G. S. 1949, 21-410. She makes the statement that not any of the evidence introduced by the state proved or tended to prove that deceased was pregnant with a "vitalized embryo," but conclusively showed that she was actually "quick with child" and defendant must have been guilty of a violation of G. S. 1949, 21-410, manslaughter in the second degree, rather than a violation of G. S. 1949, 21-407, manslaughter in the first degree.

We are unable to follow this argument. To the experts there is

rather a shadowy zone between the time when a woman is pregnant merely with a "vitalized embryo" and the time when that embryo has advanced so far that she would be said to be "quick with child." In common parlance, the term is used to designate the time when a woman has felt movement in her womb from the child she is carrying. We held in *State v. Hatch*, 83 Kan. 613, 112 Pac. 149, the term is meant to indicate the state of development of the unborn child. Whatever be the conclusion as to the above, we will not place upon the state the burden of proving in a prosecution for manslaughter growing out of an abortion whether the child the dead woman was carrying was a "vitalized embryo" or had developed to the stage where she could be said to be "quick with child."

The evidence in this record demonstrates the necessity and wisdom of this rule.

One doctor testified he found a pregnancy of approximately five months; that ordinarily women feel quickening between "four and five months, but there had been cases where women had gone through repeated pregnancies without feeling quickening." The doctors all refused to testify categorically that this woman was "quick with child." Under pressing cross-examination one of them testified:

"Q. 'Yes' or 'No', do you? A. Well, it would be a relative type, not a positive opinion. At this stage of development is the most common stage at which the symptoms of quickening is felt, but due to the variations I am unable to say positively whether she had this quickening at this period."

Defendant argues that under our statutes, as we have interpreted them, the crime of causing the death of a woman by attempting an abortion where the woman is pregnant with a vitalized embryo is a more serious offense than that of causing an abortion of one where she is pregnant with a quick child. From this she argues that the two offenses are separate and distinct.

We have examined the statutes and authorities upon which defendant relies and cannot give them the weight contended for by defendant. In the first place, the statutes themselves do not so provide. G. S. 1949, 21-410, is the section dealing with the abortion of a woman pregnant with a quick child. Causing the mother's death is under that section made manslaughter in the second degree. This is a felony. (See G. S. 1949, 21-421.) The section dealing with causing an abortion of a pregnant woman is G. S. 1949, 21-437. That section makes performing an abortion on any pregnant woman

a misdemeanor. It is only when the prosecuting officer saw fit to prosecute under G. S. 1949, 21-407, that it might be argued it is a more serious offense to cause a woman's death by an abortion when she is pregnant than to do such a thing when she is pregnant with a quick child. This is brought about by the provision that G. S. 1949, 21-407, speaks of killing a human being by the act of defendant while defendant is engaged in the perpetration of a crime or misdemeanor not amounting to a felony. Since by G. S. 1949, 21-410, the crime described therein is a felony, in order to state an offense under G. S. 1949, 21-407, the state must rely on G. S. 1949, 21-437, which in and of itself makes the crime of abortion of a woman, who is merely pregnant, but mayhap in the early stages of pregnancy, a misdemeanor. We have heretofore demonstrated in this opinion that it was not error to charge this defendant with a violation of G. S. 1949, 21-407, and to describe in the information a violation of G. S. 1949, 21-437.

The idea that under our statutes it was a less serious offense to cause the death of a woman pregnant with a quick child than to cause the death of one pregnant with a vitalized embryo was raised in *State v. Harris*, supra. There the state had charged the defendant with manslaughter in the first degree under G. S. 1949, 21-404, and had described the crime of abortion under G. S. 1949, 21-437. On appeal the defendant raised the question we are now considering. We did not give the argument any weight but said:

"Conceding without deciding the truth of the contention, the responsibility is upon the legislature and not upon the court, and the defendant can be given no judicial relief on the mere ground of inconsistency of penalties."

The decision in that case actually turned on whether killing a pregnant woman while violating G. S. 1949, 21-437, was murder at common law. As has already been remarked in this opinion, we held it was.

In *State v. Patterson*, 105 Kan. 9, 181 Pac. 609, one of the defendants was convicted of manslaughter in the first degree because he and others performed an abortion upon a woman, causing her death. The defendants had been charged, as this defendant was, under G. S. 1949, 21-407, and the offense of violating G. S. 1949, 21-437, had been described. One of the arguments made by defendants was failure of the trial court to instruct the jury under G. S. 1949, 21-410. We simply remarked in dealing with this argument that pregnancy with a quick child had been neither pleaded or proved. Hence there was no occasion for an instruction on that statute.

In *State v. Keester*, 121 Kan. 167, 246 Pac. 685, the defendant was charged with a violation of G. S. 1949, 21-410, and convicted of a violation of G. S. 1949, 21-407. We held this was error. The state on appeal argued that the prosecution had already done what it has here, that is, charged the defendant with a violation of G. S. 1949, 21-407. Our opinion is actually devoted to demonstrating that the information was for a violation of G. S. 1949, 21-410. We did say at the end of the opinion there was a curious anomaly in our statutes by which one who willfully committed an act intended to cause an unlawful abortion in the early stages of pregnancy before the quickening of a fetus was guilty of manslaughter in the first degree if the woman died as a result, while a similar act perpetrated on a woman in the later stages of her pregnancy was manslaughter in the second degree.

This statement is not authority for the position taken by defendant here, however. Furthermore, it was *dictum* and not necessary to a decision of that particular case. We do not question the holding in *State v. Keester*, supra. Had this prosecution been for a violation of G. S. 1949, 21-410, then the conviction would have been of necessity of manslaughter in the second degree. We are simply holding that where the defendant is charged with manslaughter in the first degree, in violation of G. S. 1949, 21-407, and the basis of the charge is a violation of G. S. 1949, 21-437, the state need only hold that the woman in the case was pregnant and the stage of development of the unborn child is of no consequence.

Defendant next argues that the trial court erred in refusing to give instructions requested by her. These instructions were actually given in substance by the trial court.

Defendant next argues the court erred in giving certain instructions. The trial court did tell the jury that in order to convict defendant of manslaughter in the first degree it must find beyond a reasonable doubt that deceased was not pregnant with a quick child. We have already demonstrated in this opinion that such an instruction was not correct. The instruction given was more favorable to the defendant than she was entitled to, however. She was not prejudiced by it.

The other objections to instructions have been examined and found to be without merit.

The defendant next argues that the court erred in permitting counsel for the state in his argument to the jury to make remarks that were prejudicial to her. We have examined these remarks.

We find they did not affect the orderly administration of justice or the substantial rights of the defendant.

The arguments of defendant that the verdict was contrary to law and to the evidence we find to be without merit.

Defendant also argues that the trial court erred in admitting over her objection incompetent and prejudicial testimony. The testimony to which this refers was admitted during the examination of one of the doctors who performed the autopsy. After this doctor had testified to all the details of the condition in which he found the body of deceased, that is, the intact water sac, the torn placenta, the apparent loss of blood and the half-formed child, he was asked "In your opinion was this a therapeutic or a criminal abortion?" Counsel for the defendant objected on the ground the question was misleading and suggestive, and it was a question for the jury. This objection was overruled, the witness was permitted to give his opinion and stated that in his opinion it was a criminal abortion.

One of the burdens of the state was to prove the operation was not necessary to preserve the life of the expectant mother. Circumstances surrounding the case constituted substantial evidence of this. Such, amongst others, was the surreptitious manner with which the appointment was made, the fact the body was found in the basement of defendant's home and that defendant was not a doctor. It was proper for the doctor to give his opinion on this from an examination of the body. Such is the information counsel for the state intended to elicit. There could have been no objection had the question been "Was this a therapeutic abortion?" It is perhaps unfortunate that counsel included in his question the alternative "or a criminal abortion." It actually added nothing to the question since if the abortion was not therapeutic it must have been criminal. The defendant was not prejudiced by the admission of this testimony.

The judgment of the trial court is affirmed.