No. 45,243

State of Kansas, *Appellee*, v. Bobby Dan Sharp, *Appellant*.

(451 P. 2d 187)

Opinion filed March 8, 1969.

*Hartzell J. Whyte*, of Kansas City, argued the cause, and was on the brief for the appellant.

*Nick Tomasic*, Assistant County Attorney, argued the cause, and *Kent Frizzell*, Attorney General, and *Frank D. Menghini*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The appellant, Bobby Dan Sharp, was convicted on charges of robbery and burglary. He has appealed. In this opinion we shall refer to him either by name or as defendant.

The state's evidence showed that approximately 1:00 or 2:00 a. m., May 8, 1966, a car containing what the victim called a group of "boys" drove up to the John Price residence. Mr. Price, the victim, and a man 55 years of age, lived alone and was asleep at the time. The "boys" proceeded to break the latch on the rear door and then entered the kitchen, where they turned on the light. Mr. Price was aroused by the noise and raised up on his elbow in bed. The gang, one of whose members was identified as the defendant, proceeded into Price's bedroom where they had him turn on a bedside light.

One of the "boys," Howard White by name, rifled the pockets of Price's trousers, which lay by the bed, taking some four dollars and seventy-five cents. White also took the victim's knife and wrist watch. Members of the group then proceeded to beat Mr. Price with their fists and with a grass sickle whip in a vain effort to find where the rest of his money was. One of the "boys" stated during this attack that he knew Price had more money because he had worked all week.

After becoming convinced by Price's denials that he had no more money, the "boys" retired to the kitchen where, following an argument, they split the money between them and left the house. Price observed them leaving in a blue and white Ford with a convertible top. There appeared to be five in the car.

Mr. Price then put on his clothes, turned off the lights, and sat on the porch with his dog. About 3:00 a. m. Price saw the same car return with about the same group on board. He thereupon retreated in the dark to the hill back of his house, taking his dog along, and watched proceedings from there. Again the same group of "boys" turned on the kitchen light and went through the house. After they left, a radio was missing and some food was gone from the icebox.

Several points are raised on appeal. The first relates to a remark made by the prosecutor in closing argument which Sharp alleges incorrectly stated the law, to his prejudice. The challenged remark occurred in the following sequence:

"Mr. Whyte talked about burden of proof all through this and I have, also. The burden of proof is upon the State to prove a case, and I don't think there is

anything in the record that will disprove that Bobby Dan Sharp committed these two crimes.

"MR. WHYTE: To which we object; the burden never shifts to the defendant. The defendant never has to disprove anything.

"MR. GRAUBERGER: If you'd let me finish. There is nothing in the record that shows that the State has not proved Bobby Dan Sharp guilty of these two crimes. A positive identification of this man was made by the complaining witness, the only man we had to present the evidence."

It is contended this line of argument misstated the law and "violated a basic principle of criminal law, in that it attempted to shift the burden of proof from the State to the Defendant."

The trial court did not instruct the jury to disregard the prosecutor's remarks but we are nonetheless disinclined to view the incident as constituting prejudicial error.

Considering the language as a whole, we question whether it can be construed as an argument by the state that the defendant had the burden of establishing his own innocence. We note, especially, that the challenged language is immediately preceded by the prosecutor's statement that "The burden of proof is upon the State to prove a case . . ." What followed, although it may have been awkwardly composed and phrased, amounts to no more, in our judgment, than an expression of belief on the part of the speaker that the state's evidence had not been counterbalanced or impugned.

Moreover, no exception is taken to the court's instructions, which appear to have been somewhat lengthy, nor is any contention made that they unfairly or inadequately set out the relevant law. We may assume, in the absence of a contrary showing, that the jury was properly instructed on the burden of proof, for it is presumed that a judicial officer will properly perform his duties. (*Lyerla v. Lyerla,* 195 Kan. 259, 264, 403 P. 2d 989.)

The court, in ruling upon defendant's objection to the state's argument at an out of court hearing, remarked that the jury had been adequately instructed on the law in that area. Moreover, the court observed, it had several times warned and cautioned the jury not to consider comments made by counsel as evidence. This wholesome advice would tend to provide a further safeguard against possible prejudice.

It is next argued that the trial court erred in overruling a motion to quash count two of the information. Omitting formal parts, count two charged:

". . . on or about the 8th day of May, 1966, one Howard Lawrence White, one Bobby Dan Sharp, one Nathana Davis Bey, one Oscar Thomas Cloinch and one James William Bailey, *with deadly and dangerous weapons, to wit: their fists,* did unlawfully, wilfully and feloniously make an assault upon one John Price, with intent him, the said John Price, unlawfully, wilfully and feloniously to rob, and the money and personal property of the said John Price to unlawfully, wilfully and feloniously steal, take and carry away:

| | |
|---|---|
| Cash | $4.40 |
| Motorola Radio | $15.00 |
| Swiss made watch | $17.00 |
| Pocket knife | $1.00 |
| | |
| Total and aggregate value of | $37.40 |

from the person, in the presence, against the will, and by putting the said John Price in fear of some immediate injury to his person, the said items, they, the said Howard Lawrence White, Bobby Dan Sharp, Nathana Davis Bey, Oscar Thomas Cloinch and James William Bailey did unlawfully, wilfully and feloniously steal, take and carry away, the said items being then and there the property of the said John Price . . ." (Emphasis supplied.)

The defendant argues that "fists" do not constitute or come within the category of "deadly and dangerous weapons." We are not prepared to say that under no circumstances may human fists be considered dangerous or deadly weapons, especially when applied in concert by members of a gang of thugs. However, we need not decide this interesting question here. The statute defining first degree robbery, K. S. A. 21-527, does not require the use of deadly and dangerous weapons in the commission of that offense. It provides simply that any person who takes property of another from his person or in his presence and against his will by doing violence to his person or putting him in fear of immediate injury to his person shall be guilty of robbery.

Every one of the elements required by statute to constitute the offense of robbery in the first degree are set out in count two of the information. The addition of the words "with deadly and dangerous weapons, to-wit: their fists," is entirely superfluous and clearly surplusage. It is a generally recognized rule that where a pleading contains unnecessary allegations they may be treated as surplusage. (4 Hatcher's Kansas Digest (Rev. Ed.) Pleadings, § 76; *State v. LeVier,* 202 Kan. 544, 451 P. 2d 142.)

The rule is applicable in both civil and criminal proceedings. In the recent case of *State v. Lee,* 197 Kan. 463, 465, 419 P. 2d 927, which involved a charge of robbery, we quoted from 42 C. J. S.,

Indictments and Information, § 250, p. 1267, to the effect that immaterial and unnecessary allegations in an indictment which might have been omitted therefrom without affecting the charge, could be considered surplusage and disregarded. (See, also, *State v. Brown*, 171 Kan. 557, 236 P. 2d 59 and *State v. Bilby*, 194 Kan. 600, 400 P. 2d 1015.)

The defendant next maintains that his motion for acquittal should have been sustained because he was not identified, and it may here be remarked that evidence going to the identity of the individuals who entered Price's house the second time was somewhat scanty. However, the defendant was positively identified by Price as one of the group present in his bedroom when he was robbed and beaten. This was immediately after the lock on the back door was broken and the house entered the first time. That entry was violent and for an illicit purpose, robbery. The record contains adequate evidence of identity as to both burglary and robbery.

But it is argued there was no evidence that Sharp took Price's property by violence or putting him in fear, or that he actually struck him. This is a strained, if not to say, a strange argument. Mr. Price identified Sharp as one of the "boys" who was present in his bedroom. One of the other "boys" took Price's money, his wrist watch and his knife, after which the gang beat the wretched victim in a futile effort to unearth more money. The atmosphere from the beginning to end of the bedroom episode was one of threats and violence, well calculated to induce fear in the intended victim.

Mr. Sharp can hardly be termed an innocent young lad; he was sentenced in this case as a "two-time loser," who twice before had been convicted of felony. Nor is there anything in the circumstances shown by the record which suggests that Sharp's companions were just carefree "boys" out for an innocent lark. One of the group was armed with a formidable weapon, a grass sickle whip. Another turned out the bedside lamp because he wanted "no identification on this deal." And all of them "began to 'pow' all their dukes" into Mr. Price, as he put it, and the unfortunate Mr. Price wound up, according to statements in final argument, with three broken ribs, among other injuries.

That the defendant may not personally have taken Price's money, or his watch and knife, is not of controlling importance. He was identified as being personally present in the bedroom and his presence there could only have intensified the ominous atmosphere

which pervaded that chamber. An inference that Sharp participated in splitting the loot can also be drawn from the evidence. It has long been the law that one who aids and abets in the commission of an offense may be charged, tried and convicted as a principal. (*State v. Sims,* 192 Kan. 587, 389 P. 2d 812; *State v. Gates,* 196 Kan. 216, 410 P. 2d 264.) There was sufficient evidence to justify the court in submitting instructions to the jury on the law relating to principals and accessories before the fact, as well as to justify the jury in finding the defendant guilty as a participant in both the robbery and the burglary.

A final complaint concerns the ruling by the trial court which prohibited counsel from referring to certain testimony on final argument. The defendant argues that he was thus deprived of his right to counsel in violation of § 10 of the Kansas Bill of Rights. This argument we believe is unfounded.

The circumstances are these: the defendant, in presenting his case in chief, called his brother, Oscar, to the stand. Oscar testified that on the night in question the defendant was home, had slept in the same room with him, and did not leave the house that night. The state failed to object when this evidence was given, but after the witness had been questioned for some time and in considerable detail, counsel interposed a motion to strike Oscar's testimony for the reason that proper notice of alibi had not been served.

Following considerable colloquy between the court and counsel on both sides, the court ruled there had been no compliance with the statutory provisions relating to the service of notice of alibi. In so ruling we believe the court was correct. K. S. A. 62-1341 provides that notice of a plea of alibi, together with the names of witnesses expected to be used, shall be served on the county attorney as much as seven days before trial. It is clear from the record before us that no more than five days notice had been given in this case. We have repeatedly held alibi evidence to be inadmissible where there has been no compliance with the statute. (*Burns v. Amrine,* 156 Kan. 83, 131 P. 2d 884; *State v. Parker,* 166 Kan. 707, 204 P. 2d 584; *State v. Osburn,* 171 Kan. 330, 232 P. 2d 451; *State v. Trams,* 189 Kan. 393, 369 P. 2d 223; *State v. Rider,* 194 Kan. 398, 399 P. 2d 564.)

It is true the statute further provides that the court, on due application and for good cause shown, may permit the notice to be served at any time before the jury is sworn. Permission under

this provision is, however, discretionary with the court, and its refusal to grant permission will not be overturned in the absence of a showing that its discretion was abused. (*State v. Rafferty*, 145 Kan. 795, 67 P. 2d 1111; *State v. Berry*, 170 Kan. 174, 223 P. 2d 726.)

In our judgment no abuse of discretion is shown by this record. The case was tried for the first time on May 17 and 18, 1967. That trial resulted in a hung jury. The defendant's present counsel, privately employed, represented his client at both the first and second trials. At the first trial, evidence of the same alibi was offered by the defendant and was refused admittance because of the defendant's failure to give the required notice. Thereafter, the defendant had a period of twenty days between the first and second trials to serve notice of alibi, but did not do so.

The trial court would have been justified in striking Oscar's testimony completely from the record and instructing the jury to disregard it. However, this was not done. Instead, the court observed that it doubted the effectiveness of such an instruction, and rather than call more attention to the situation, it would rule that further alibi testimony would not be admitted, and that counsel should restrict final argument as to the defendant's whereabouts to the defendant's personal testimony.

Specific objection does not appear to have been made to this ruling but we do not care to base our judgment on that alone. The trial court was obviously trying to be fair. Oscar's damaging testimony had been given and was before the jury. Although the evidence was inadmissible, and subject to a motion to strike, the court permitted it to remain before the jury. The sole condition imposed was that counsel not comment thereon, although this restriction was not applied to the defendant's own personal testimony.

In the absence of a contrary showing, we believe the ruling cannot be said to have been prejudicial. It might even be considered as having a contrary tendency. In any event, Oscar's testimony as to his brother's alibi remained before the jury and we cannot say, from this record, that the court's refusal to permit comment thereon resulted in prejudice to the defendant's substantial rights. This court has often held that where error does not result in prejudice, reversal is not justified. (2 Hatcher's Kansas Digest (Rev. Ed.), Criminal Law, § 439.)

The judgment of the trial court is affirmed.