No. 45,080

STATE OF KANSAS, *Appellee*, v. THOMAS FAHY, *Appellant.*

(440 P. 2d 566)

Opinion filed May 11, 1968.

*Stephen C. Chambers,* of Olathe, argued the cause, and *John J. Gardner,* of Olathe, was with him on the briefs for the appellant.

*Gerald E. Williams,* Assistant County Attorney, argued the cause, and *Robert Londerholm,* Attorney General, and *James Bouska,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a conviction of child abuse and torture as prohibited by K. S. A. 1967 Supp. 38-714.

The defendant was charged with three counts of statutory rape and one count of child abuse and torture. He was acquitted of the statutory rape charges but found guilty by the jury of child abuse and torture. The appeal is from the latter conviction.

Because the abstract of both the appellant and appellee left much to be desired we have called for the transcript in order that the court be fully informed as to the procedure and the evidence.

There is surprisingly little dispute as to the facts on the abuse and torture issue.

The complaining witness, a young girl just under sixteen years of age, was living with her mother and two younger brothers in Overland Park, Kansas, the father having died in August, 1964. The mother worked at Federal Aviation at Olathe, Kansas, handling teletype and flight data. She started dating the defendant, a young man twenty-seven years of age, sometime in 1965. During the middle of September or the first part of October, 1965, the defendant

started staying at the home to be with the children when the mother worked on a night shift. After the first of January, 1966, the defendant made the home his permanent residence. The mother and the defendant were married March 27, 1966.

The family life was not too congenial—it appears that on June 17, 1966, the mother and the defendant were brought before the juvenile court on charges of contributing to the dependency and neglect of a minor. The charges were instigated by the present complaining witness.

So much for the family history. We come now to the specific facts surrounding the charge of abuse and torture.

The complaining witness testified:

She had driven the car the evening before, November 17, 1966, without permission and the defendant found out about it the next morning. When she came home from school, November 18, she was sent to her room. Her mother left for work about 11:20 in the evening. About 11:30 the defendant came into her room, got her out of bed and sent her to the kitchen. The defendant had been drinking heavily, consuming eight or nine beers during the episode in question. He followed the complainant into the kitchen, started slapping her and asking her if taking the car was that much fun. He kept slapping her across the face. About an hour later he ordered her to take her pajamas off. As she made no move he unzipped them and told her to take them off, which she did. He told her to stand up close to him. He was sitting on the kitchen stool. He then, over a period of time, burned her on the breasts and stomach with a cigarette while continuing to slap her. She was burned at ten or eleven places. About 5 or 6 o'clock in the morning his eyes became bloodshot and his voice slurred. He let her go to bed about 7:30, just before her mother came home from work. The witness further testified:

"My lips were all bruised and cut. They were swelled. My face had bruises across there. I had two black eyes and my ears were bruised."

When her mother came home she got some vasoline to put on the burns. She put it on one and the witness put it on the rest while the mother got an ice pack for her face.

The mother, testifying for defendant, stated:

When she came home from work she put her head in the complainant's room and saw that her lips were cut and swollen. She was told that defendant did it. She got an ice pack for the face. The mother was told that the defendant accidentally burned the

complainant with a cigarette. It was a very slight burn, no blister. The mother put vasoline on it.

The defendant testified:

"Q. All right. Did you see your wife leave for work?

"A. Yes, I did.

"Q. What time was that?

"A. Approximately 11:15 or 11:20.

"Q. All right. Just describe to the jury from there on, how long did you talk to [complainant], what did you do, and what transpired.

"A. Well, I talked to [complainant] until about 1:30 or 2:00 in the morning. I was trying to, I guess, talk some sense into her head. She didn't care. She said, 'I don't care if it hurts you because it hurts mother, therefore, I am going to keep on doing it'. I tried to reason with her. This, it was like talking to a blank wall. I would say something and she would use profanity towards me. Then I would slap her. She would settle down a little bit then. I would talk some more, and she would start sassing back and using profanity again. She would be slapped. This went on, oh, like I said, until about 1:30 or 2:00. I told her to go to bed, and I went to bed myself.

"Q. How many times did you slap her?

"A. I would say several times.

"Q. How did you hit her, tell the jury.

"A. Open-handed, a slap across the face.

"Q. Did you make any marks on her?

"A. The next morning, or the next day, I noticed she did have a swollen lip, right here (indicating).

"Q. Were you drinking any beer this night?

"A. Yes, I was.

"Q. How many beers did you drink, do you know?

"A. That is hard to say.

"Q. Well, several.

"A. Eight or nine. Several."

Defendant testified further that if he burned the complainant it was accidental by slapping her while he had a cigarette in his hand. He did not ask her to take off her pajamas. He let her go to bed between 1:30 and 2:00. None of the blows or slaps he gave her knocked her down.

The defendant has appealed from his conviction of torture and abuse.

The appellant first objects to the trial court's refusal to direct the county attorney, upon the appellant's application, to amend the information to show the specific time of the alleged unlawful acts or in the alternative to file a bill of particulars pursuant to K. S. A. 62-1341.

The trial court did not direct the county attorney because it was informed that the dates were set out as specifically as possible and

the evidence to be presented as to dates would be the same as that presented at the preliminary hearing.

Furthermore the defendant does not question the time he spent with the complainant after 11:20 o'clock the evening of November 18, 1966, and the morning of the 19th, after the mother had gone to work, and kept her up slapping her while he drank eight or nine cans of beer. In fact, there is very little difference between the testimony of the complaining witness and the appellant on the charge of torture and abuse other than the length of time it continued and the unrobing and burning.

Also, the trial court permitted the defendant to produce his time sheets while at work and any other alibi evidence he desired.

The appellant could have in no way been prejudiced in presenting an alibi defense.

The appellant further suggests:

"Defendant contends that the trial court by refusing his request for the medical reports pertaining to the complaining witness has violated his due process. What would have been revealed by the reports is still only known by the Juvenile Court and the County Attorney, and to this day no disclosure of the contents of these reports has been made."

The evidence is positive that there were no medical tests made of the complaining witness and therefore no reports. Furthermore, the request should have been directed to the juvenile court holding the records, not the county attorney.

The appellant contends that—

"During the trial the defense called as a witness [the mother], wife of the defendant. On cross-examination the prosecutor specifically asked if she had been convicted in Juvenile Court of contributing to these same charges. . . ."

The appellant further contends that the cross-examination violated the provisions of K. S. A. 60-421, which provides:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. . . ."

The contention might have merit were it not for the fact that at all times during the trial the appellant had attempted to inject into the case the juvenile court proceedings.

The appellant inquired of the mother and wife on direct examination in connection with the termination of her employment:

". . . Was that subsequent to the charge filed in the juvenile court?"

The defendant was asked on his direct examination:

"Mr. Fahy, had you heard anything concerning the charges from the testimony which you heard from [complainant], prior to February of 1967 in juvenile court?"

Counsel for defendant made only a qualified objection to the cross-examination. He stated that the cross-examination was "entirely inadmissible unless the court wants to admit all of these transcripts from the juvenile hearing, which we are prepared to mark and have introduced into evidence." The appellant did later introduce the transcript of the juvenile court proceeding.

It would appear that the appellant was at all times attempting to get the juvenile court proceeding into evidence for the purpose of showing there was no reference to rape. He cannot now object because there was reference to torture and abuse.

Last, the appellant contends that K. S. A. 1967 Supp. 38-714, which reads:

"Any person who shall torture, cruelly beat or abuse any child under the age of sixteen (16) years or who shall willfully inflict upon such child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition shall be deemed guilty of a felony and upon conviction shall be subject to punishment by imprisonment for a term not exceeding two (2) years."

is too vague and indefinite to be enforceable as a penal statute. The statute conveys with sufficient definiteness what conduct is prohibited by law. Such conduct includes torture, beating or abusing a child or punishing a child cruelly or inhumanly. Because the statute sets up stringent standards does not make it unconstitutional. The statute prohibits the above acts and such words as torture, beat, abuse, cruel punishment or inhuman punishment are hardly vague.

The fact that the trial court sees fit to define the language used in a statute by governing case law or common dictionary meaning does not indicate indefiniteness. It is only required that the phrase used provides reasonable definite standards which one reading the statute can understand and contemplate. (*State, ex rel., v. Fairmont Foods Co.*, 196 Kan. 73, 410 P. 2d 308.) We hold that words like "beat," "abuse," "torture," "cruelty" and "traumatic" provide such standards.

A careful examination of the transcript, the abstracts being of no assistance, discloses no trial errors requiring a new trial.

Judgment is affirmed.

APPROVED BY THE COURT.