NOT DESIGNATED FOR PUBLICATION

No. 121,433

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAW DAH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed April 9, 2021. Affirmed in part, reversed in part, sentence vacated, and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Tamara S. Hicks*, assistant county attorney, Susan Lynn Hillier Richmeier, county attorney, and Derek Schmidt, attorney general, for appellee.

Before BRUNS, P.J., BUSER, J., and WALKER, S.J.

PER CURIAM: Jaw Dah appeals after a jury convicted him of two counts of aggravated criminal sodomy, two counts of battery, aggravated battery, aggravated assault, three counts of abuse of a child, intimidation of a witness, and criminal threat. We find that Dah's criminal threat conviction must be reversed and remanded to the district court because it is impossible to determine from the record on appeal whether he was found guilty of making an intentional or reckless threat. Based on our review of the record, we find no other reversable error. Thus, we affirm in part, reverse in part, and remand with instructions.

1

FACTS

This case arises out of several incidents of violence allegedly committed by Dah against his wife and their two minor children over a period of approximately five years. Dah met his wife in a refugee camp in Thailand, and the couple married in 2007. The family immigrated to the United States from Myanmar, and they ultimately ended up living in Garden City. One of the children was born in Thailand in 2008, and the other was born in Kansas in 2014.

On December 11, 2017, Dah's wife went to Family Crisis Services in Garden City and spoke to Maria Ruiz—a survivor services advocate—through a Burmese translator. She told Ruiz that Dah had choked her and hit her in the head with a cell phone. Dah's wife also told Ruiz about previous incidents in which Dah had choked and raped her. Moreover, she reported that Dah hit the children.

Dah's wife indicated that she was afraid that Dah would kill her if he found out she was at the crisis center or that she had told anyone about his abuse of her and their children. Ruiz provided safety planning to Dah's wife and offered to have her and the children move into a shelter or a safe house. However, Dah's wife said that she was not ready to move into a shelter at that point in time and indicated that she would contact Ruiz if she believed further intervention was necessary.

Two days later, Dah's wife returned to Family Crisis Services and spoke with Ruiz a second time. She told Ruiz that she and her husband had met with a priest and "everything was okay now." Nevertheless, on February 9, 2018, Dah's wife returned to Family Crisis Services a third time and told Ruiz that Dah had threatened to kill her and the children. This time, the staff at the Family Crisis Center helped place her and the children into a safe home that day. Moreover, Ruiz assisted Dah's wife in obtaining a protection from abuse (PFA) order against him.

Subsequently, Ruiz assisted Dah's wife—working with a Burmese translator—in writing out a timeline of significant events that had occurred in the family home. Around the same time, Dah filed a petition for divorce. On April 6, 2018, Ruiz reported the alleged incidents to the police, and Officer Joshua Meinzer responded to Family Crisis Services.

Officer Meinzer spoke with Dah's wife who reported—with the assistance of a translator—that she had been raped by Dah in October 2017. The officer also spoke to Ruiz, who told him that she helped Dah's wife create a "packet of [incidents]" documenting the facts supporting multiple alleged crimes dating back to 2013. Upon seeing the packet of information, Officer Meinzer contacted Detective Lana Urteaga to assist in the investigation.

Detective Urteaga arrived at Family Crisis Services and spoke briefly with Dah's wife with the help of a telephone-based interpretation service. The detective then had her come to the law enforcement center later that day for a more thorough interview. A few days later, Detective Urteaga also interviewed the two Dah children about the alleged ongoing abuse in the home.

On April 12, 2018, Detective Urteaga interviewed Dah at the law enforcement center with the assistance of a Burmese translator. On the same day, a search warrant was executed at the Dahs' residence. The officers who participated in the search seized items that they believed were relevant to the alleged incidents of abuse. During the search of the home, a rifle was discovered in a closet where Dah's wife had said it was kept. In addition, knives were also found in a Bud Light box in a corner of the kitchen and twelve belts were seized.

While at the Dahs' residence, Officer Knoll went to the basement and seized a hair-cutting kit from a downstairs bedroom. The room was separately rented from the

3

landlord by Gerardo Soriano, but he was not present when the search warrant was executed. Officer Knoll later spoke with Soriano—with the assistance of a Spanish-speaking officer—and Soriano indicated that he was aware the woman who lived upstairs had been stabbed on her wrist. Dah's wife explained to Soriano that Dah had stabbed her.

On June 29, 2018, the State charged Dah with twelve criminal counts and subsequently another count was added. The amended criminal complaint included the following charges: Count I-A, aggravated battery; Count II-A, aggravated intimidation of a witness or victim; Count III-A, aggravated battery; Count IV-A, aggravated assault; Count V-A, abuse of a child; Count VI-A, abuse of a child; Count VII-A, aggravated battery; Count VIII-A, aggravated domestic battery; Count IX-A, abuse of a child; Count X-A, aggravated criminal sodomy; Count XI-A, aggravated intimidation of a witness or victim; Count XII-A, aggravated criminal sodomy; and Count XIII-A, criminal threat.

Prior to trial, Dah filed a motion to suppress the statements that he provided to Detective Urteaga during the investigation. Dah claimed his statements "were not voluntarily given, were obtained through a violation of *Miranda v. Arizona*, and in violation of his Sixth Amendment right to counsel." In ruling on the motion, the district court recognized that some of "the translation was only partial and inaccurate as conveyed to the examining officer and recorded on the tape." The district court concluded that if the State sought to use any of the statement at trial, "fairness demands that each translation is subject to challenge for accuracy and statements made by the officer during the interview were misleading or false and cannot be used by the Jury as an accurate statement of the facts of this case."

On March 18, 2019, the district court commenced a four-day jury trial. During the trial, the State presented the testimony of 10 witnesses—including Dah's wife and the investigating officers—and introduced 14 exhibits into evidence. However, Dah's interview with Detective Urteaga was not admitted into evidence. The defense presented

4

the testimony of 7 witnesses and introduced 13 exhibits into evidence. Dah did not testify.

Prior to submission of the case to the jury, the district court dismissed a count of aggravated domestic battery. After deliberation, the jury convicted Dah of two counts of aggravated criminal sodomy, two counts of battery, aggravated battery, aggravated assault, three counts of abuse of a child, intimidation of a witness, and criminal threat. The jury acquitted him of one count of aggravated intimidation of a witness. Before sentencing, Dah filed a motion for judgment of acquittal, a motion to set aside the verdicts, and a motion for a new trial. The district court denied all three posttrial motions. The district court also denied Dah's motion for a downward dispositional and durational departure. Ultimately, the district court sentenced Dah to a controlling term of 155 months' imprisonment.

Thereafter, Dah filed a timely notice of appeal.

ANALYSIS

On appeal, Dah raises five issues. First, whether the district court erred in allowing the State to introduce evidence of prior incidents of misconduct without first analyzing the evidence under K.S.A. 2017 Supp. 60-455. Second, whether his criminal threat conviction should be reversed because it is impossible to determine from the record if he was convicted of intentional or reckless criminal threat. Third, whether the district court erred by failing to give a unanimity instruction regarding one of the charges of abuse of a child. Fourth, whether the State presented sufficient evidence at trial to support that conviction. Fifth, whether his choice not to testify was voluntary.

*Evidence of Prior Acts of Misconduct*

Dah contends that the district court erred in its admission of instances of prior misconduct without first analyzing the evidence under K.S.A. 2017 Supp. 60-455. Significantly, Dah presents this issue for the first time on appeal. As the State accurately points out, Dah did not object to the admission of this evidence at trial nor did he ask the district court to analyze it as prior acts of misconduct under K.S.A. 2017 Supp. 60-455. In the event we find that Dah properly preserved this issue, the State alternatively argues that the admission of this evidence was harmless based on the other evidence it presented at trial.

Dah candidly acknowledges that he failed to preserve this issue below as required by Kansas Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34). This rule requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Although Dah argues that this issue should be addressed for the first time on appeal because it involves a question of law and because consideration of the issue is necessary to serve the ends of justice or to prevent denial of fundamental rights, we do not find that these exceptions are applicable under the circumstances presented.

First, we find the admission of K.S.A. 2017 Supp. 60-455 evidence is not solely a question of law based on consideration of proven or admitted facts. Even if the admission of evidence is found to be erroneous, the extent of the error must be considered in light of the totality of the evidence admitted at trial to determine if the error was harmless. See *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]). As the Kansas Supreme Court found in *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009), this exception does not apply to a challenge to the admission of evidence from which there was no timely objection.

6

Likewise, we find the exception allowing consideration of an evidentiary issue because it is necessary to serve the ends of justice or to prevent the denial of fundamental rights is not applicable in this case. In *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010), our Supreme Court found that "we have consistently been refusing to review an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right." See *State v. Logsdon*, 304 Kan. 3, 28, 371 P.3d 836 (2016) (rejecting claim that exception applied to the erroneous admission of evidence when there was no timely or specific objection).

Dah complains about evidence of five instances of his prior misconduct being admitted at trial: (1) Ruiz testified that Dah's wife told her that Dah had raped her; (2) Dah's wife testified that Dah forcefully had sex with her—both vaginally and anally; (3) Dah's wife testified that Dah had falsified her signature on a tax document; (4) Dah's wife testified that on June 22, 2014, Dah struck their son on his back; and (5) Dah's wife testified that Dah threatened—"all the time"—to use his rifle against her. As discussed above, Dah did not lodge an objection to any of this evidence.

K.S.A. 60-404 provides:

> "A verdict or finding shall not be set aside, nor shall the judgment or decisions based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

In other words, a party must make a contemporaneous and specific objection to the admission of evidence in order to preserve the issue for appeal. K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016); *State v. King*, 288 Kan. 333, 348-350, 204 P.3d 585 (2009) (stressing the importance of the requirement of an objection under K.S.A. 60-404). The purpose of the statute requiring a timely and specific objection is to give the district court the opportunity to address the issue so as to

conduct the trial without admitting tainted evidence. Also, a contemporaneous objection reduces the possibility that a jury's verdict will be reversed and that a new trial will be ordered. 288 Kan. at 342. Hence, we conclude that consideration of this issue is precluded based on Dah's failure to make a timely and specific objection at trial.

Finally, even if there was error, we find that it was harmless. See *State v. Lowery*, 308 Kan. 1183, 1235, 427 P.3d 865 (2018) (The erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 2020 Supp. 60-261.) A review of the record on appeal reveals that the State presented overwhelming evidence of Dah's guilt at trial. Specifically, the State presented the testimony of Dah's wife, one of his children, the investigating officers, and other corroborating witnesses. In addition, the State proffered several corroborating photographs and other items of physical evidence— including hair-cutting scissors, knives, and a rifle—and the district court admitted those items into evidence.

Moreover, the five instances of alleged prior misconduct of which Dah complains are not separate or independent occurrences. Instead, they were similar to or part of the res gestae of the criminal conduct with which Dah was charged. Consequently, viewing the record on appeal in its entirety, we find that the alleged errors regarding the admission of evidence of prior misconduct did not affect the jury's verdict.

*Criminal Threat Conviction*

Next, Dah contends that his conviction for criminal threat in violation of K.S.A. 2017 Supp. 21-5415(a)(1) should be reversed. He bases his argument on *State v. Boettger*, 310 Kan. 800, 822-23, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020), in which the Kansas Supreme Court ruled that the provision of the criminal threat statute relating to reckless conduct is unconstitutional. See *State v. Johnson*, 310 Kan. 835, 842, 450 P.3d 790 (2019), *cert. denied* 140 S. Ct. 1956 (2020). Specifically, our

8

Supreme Court held in *Boettger*—which was decided after the jury convicted Dah in this case—that the provision K.S.A. 2018 Supp. 21-5415(a)(1) allowing a conviction if a threat of violence was made in reckless disregard for causing fear was unconstitutionally overbroad. *Boettger*, 310 Kan. at 803.

Here, the district court—which did not have the benefit of the *Boettger* decision to guide it—instructed the jury that it could convict Dah if it found he communicated a threat "with the intent to place another in fear" or if it found he did so in "reckless disregard of the risk of causing [fear] in another." Furthermore, the verdict form did not ask the jury to decide whether Dah was guilty of intentional or reckless criminal threat. Notwithstanding, the State argues that any error in instructing the jury regarding reckless criminal threat is harmless.

We find guidance on the harmless error issue from the Kansas Supreme Court's decision in *Johnson*, 310 Kan. at 842. Similar to the present case, the State charged the defendant in *Johnson* with intentionally or recklessly making a criminal threat. Also similar to this case, the district court instructed the jury as to both alternatives without asking it to distinguish between intentional and reckless conduct. After applying the constitutional harmless error standard, our Supreme Court concluded that the error was not harmless because the jury "could have believed the [defendant's] statements were made with a reckless disregard for whether they caused fear." 310 Kan. at 843-44 (citing *Chapman*, 386 U.S. at 23-24 [defining the constitutional harmless error standard]).

More recently, in *State v. Lindemuth*, 312 Kan. 12, 470 P.3d 1279 (2020), the Kansas Supreme Court followed its analysis in *Johnson*. In particular, our Supreme Court held that where the jury was instructed on both the intentional and reckless versions of the criminal threat statute, the record must clearly show that the jury concluded the threat was made intentionally rather than recklessly in order for the error to be harmless. After reviewing the record, the Supreme Court concluded that the record on appeal did not

9

support this distinction. As such, just as our Supreme Court had done in *Johnson*, it reversed Lindemuth's criminal threat conviction, vacated his sentence, and remanded the charge to the district court for a new trial. 312 Kan. at 19.

Returning to the present case, the State asserts that it made an election of intentional threat during closing arguments. Based on our review of the record, however, this is—at best—unclear. Certainly, there is evidence in the record on which a reasonable fact-finder could have found Dah to be guilty beyond a reasonable doubt of intentional criminal threat. Yet we are not in a position to find that the jury could not have found Dah guilty of making threats with a reckless disregard for whether they caused fear. The record reveals that Dah made similar threats on many occasions and had not followed through on those threats. So, there is a possibility the jury could have found Dah's conduct to be reckless rather than intentional. Accordingly, we conclude that Dah's criminal threat conviction must be reversed, his sentence vacated, and the case remanded to the district court for a new trial on the charge of intentional criminal threat.

*Failure to Give Unanimity Instruction*

Dah also contends that the district court committed reversable error by failing to give an unanimity instruction on the charge that he "inflict[ed] cruel and inhuman corporal punishment" on one or both of his children on August 12, 2017. The State presented evidence at trial that Dah struck both of his children on their bare backs in the bathroom with a plastic clothes hanger because he was angry that they were making too much noise while he was trying to sleep. Because he allegedly struck both children, Dah argues that the district court should have given an unanimity instruction.

In response, the State contends that the facts supporting the child abuse conviction are not separate or distinct acts. Additionally, the State argues that Dah has failed to show clear error or that he was prejudiced by the district court's failure to give a unanimity

10

instruction. Rather, the State suggests that Dah actually benefitted by the State's failure to file two counts of child abuse arising out of the corporal punishment incident that occurred on August 12, 2017.

Dah concedes that he did not to request an unanimity instruction at trial. When a jury instruction is not requested, we apply a clearly erroneous standard of review. See K.S.A. 2020 Supp. 22-3414(3); *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). Under this standard of review, reversal is required only if an instruction error occurred and we are firmly convinced that the giving of the instruction would have changed the jury's verdict. See *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). The burden to show clear error under K.S.A. 22-3414(3) rests with Dah. See *State v. King*, 299 Kan. 372, 379, 323 P.3d 1277 (2014). In other words, Dah must establish the degree of prejudice necessary for reversal. *State v. Littlejohn*, 298 Kan. 632, 646, 316 P.3d 136 (2014).

Here, even if we assume that the district court erred in failing to give an unanimity instruction, we find that the error was not clearly erroneous because we are not firmly convinced that the alleged error changed the outcome of the trial. As indicated above, the State presented evidence at trial that Dah became angry while he was trying to sleep because he believed the children were making too much noise while taking their baths. While he was upset, Dah went into the bathroom and struck both children on their bare backs with a plastic clothes hanger.

Dah argues that this evidence "is really no different than what happens to a child that is spanked" and that "spanking is accepted by many as a proper means of physically disciplining a child." See *L.E.H. ex rel. D.L.H. v. Kansas Department of Social and Rehabilitation Services*, No. 111,576, 2015 WL 5036725, *7 (Kan. App. 2015) (unpublished opinion) ("Spanking a child is not illegal under Kansas law; nor is a mere spanking automatically abuse.") Although we agree with the panel in *L.E.H.* that

11

spanking a child is not in and of itself abusive, the evidence in the record shows that Dah inflicted more than a "mere spanking." Rather, the State presented evidence that Dah, a grown man, hit the children in anger with a clothes hanger on their bare skin.

As such, we find that Dah has failed to show prejudice requiring reversal. Here, the evidence supporting the act of child abuse that occurred on April 12, 2017, was essentially the same. Dah struck both children with the clothes hanger within a very short period of time in the same bathroom. Dah's wife testified that both children said that the beating hurt, and they both cried in response. Dah's daughter testified that it hurt and left a mark on her back.

If the jury believed that the State provided sufficient evidence to show beyond a reasonable doubt that Dah struck one of the children, it is likely the jury would have believed that the State provided sufficient evidence to show beyond a reasonable doubt that he struck the other child. The only distinction in the testimony is that one of the children testified that the abuse left a mark on her back, but she was not sure whether her brother also had a mark on his back. However, the degree of injury is not an element of the crime charged in this count. See K.S.A. 2017 Supp. 21-5602(a)(3). Under these circumstances, we are not firmly convinced that the jury would have reached a different verdict but for the alleged error.

*Sufficiency of Evidence of Child Abuse*

Dah also challenges the sufficiency of the evidence in support of his conviction for abusing the children on August 12, 2017. Once again, he attempts to excuse his actions by arguing that "[i]t is difficult to see how the alleged act in the instant case was in any way more harmful than a spanking" and suggesting that "[o]nly one blow with the hanger was administered, which could be much less than the punishment given in any typical

spanking." In response, the State maintains that sufficient evidence supports the conviction.

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). It is only in rare cases where the testimony is so incredulous that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

Dah cites us to a case in which the former Kansas Department of Social and Rehabilitation Services found that an allegation of child abuse against the father was unsubstantiated. See *L.E.H.*, No. 111,576, 2015 WL 5036725, at *3. As discussed in the previous section of this opinion, we do not find the evidence that the State presented in this case to be a matter of "mere spanking" of a child for disciplinary reasons. Rather, the State presented evidence that Dah angrily hit his children on their backs with a plastic clothes hanger.

"[T]he terms cruel and inhuman provide reasonable and definite standards, and common meanings that can be understood and contemplated by a jury." *State v. Burton*, No. 114,791, 2016 WL 6822225, at *5 (Kan. App. 2016) (unpublished opinion) (citing *State v. Fahy*, 201 Kan. 366, 370, 440 P.2d 566 [1968]). See *State v. Hupp*, 248 Kan. 644, Syl. ¶ 12, 809 P.2d 1207 (1991) (reaffirming *Fahy*). As such, the determination of whether Dah knowingly inflicted cruel and inhuman physical punishment was one for the jury to make. Viewing the evidence in the light most favorable to the State, the record

contains sufficient evidence to support a rational fact-finder's verdict of guilty on this count for abuse of a child.

*Dah's Decision Not to Testify at Trial*

For his final issue, Dah claims that the district court's pretrial ruling on a motion to suppress his statement to the police "was improperly used as leverage to prevent [him] from testifying in his own behalf at trial." Dah's argument focuses almost exclusively on the district court's ruling on the motion to suppress evidence, which has not been appealed. Because Dah raised this issue for the first time in his posttrial motions, our review of this issue is limited to whether the district court abused its discretion in denying his posttrial motions. See *State v. Pruitt*, 310 Kan. 952, 972, 453 P.3d 313 (2019).

As discussed in the facts section of this opinion, Dah sought to suppress his statement to the police prior to trial. In doing so, he argued that the interpreter who assisted the police during the interview was not qualified and that some of the interview had not been properly translated. The district court agreed that some of "the translation was only partial and inaccurate" and determined that if the interview was going to be used by the State at trial, "fairness demands that each translation is subject to challenge for accuracy and statements made by the officer during the interview were misleading or false and cannot be used by the Jury as an accurate statement of the facts of this case."

In other words, the district court recognized that there were at least some problems with the translation but decided to wait until trial to determine what portions of the interview—if any—would be admissible. At trial, the State agreed not to use the interview during its case-in-chief. Although the State reserved the right to potentially use portions of the statement to impeach Dah's testimony on cross-examination if he opened the door during his direct testimony. Dah did not testify, and the State never attempted to use the interview at trial. Accordingly, it would be pure speculation for us to predict how

14

the district court may have ruled had the State attempted to use any or all of Dah's interview at trial.

On the last day of the trial, defense counsel brought up her understanding of a private discussion that she previously had with the prosecutor about the use of Dah's statement. Defense counsel made the following representation to the district court about its substance:

> "[M]y understanding is if we put my client on the stand, the State will attempt to use his statements to—with Detective Urteaga. We—we discussed then I would go ahead and make an objection to accuracy, as is consistent with the ruling from this court. After my motion was filed, I would request a continuance and get time to get a transcript [of Dah's statement using a new translator] made. So I don't know if that's something you could give us some direction on."

The district court did not desire to give an advisory opinion on the issue, and it denied the request for a continuance. The district court stated:

> "If you do not have an individual that has already done an interpretation and given you an English version of what his or her interpretation of the Burmese statements that your client has made, I would suggest that it's probably too late. This trial will not be delayed for that purpose alone."

After further discussion, the district court granted a recess so defense counsel could speak with Dah. In doing so, the district court reminded the parties that "this is an issue that was pretty apparent to you months ago." After the recess, the defense rested without calling Dah to testify.

In his posttrial motions to set aside the jury verdicts, the motion for a new trial, and the motion for judgment of acquittal, Dah argued for the first time that the district court's decision on the motion to suppress effectively denied his right to testify at trial. In

15

a hearing on the posttrial motions, Dah provided no additional evidence or testimony in support of his argument that the district court had forced him to forfeit his right to testify. In responding to Dah's argument regarding this issue, the State claimed that the decision not to testify was a matter of trial strategy and was his decision to make. The district court agreed with the State's position and denied the posttrial motions.

Based on our review of the record, we find that Dah has not shown that the district court abused its discretion or that a new trial is warranted in the interest of justice. See K.S.A. 2017 Supp. 22-3501(1); *State v. Pruitt*, 310 Kan. at 972. Even though we find that the district court's decision to wait to see how the testimony came in before ruling on which portions of Dah's statement—if any—may have been admissible was reasonable, the district court's decision on the motion to suppress is collateral to the primary issue presented. Rather, the primary issue before us is whether the district court erred in denying his posttrial motions in which he raised this issue.

Although defense counsel can and should offer advice to his or her client, the final decision regarding whether or not to testify at trial rests solely with the defendant in a criminal case. See *State v. Carter*, 270 Kan. 426, 439, 14 P.3d 1138 (2000); *State v. Hargrove*, 48 Kan. App. 2d 522, 534, 293 P.3d 787 (2013). In this case, a review of the record shows that the State agreed not to use Dah's statements to the police in its case-in-chief and it honored that agreement. However, defense counsel attempted to get the State to also agree not to use any portion of Dah's statement in the event that he chose to testify. Understandably, the State did not agree because it was possible that Dah might say something during his testimony to open the door for use of some of the statement to impeach Dah during cross-examination.

After consulting with his attorney, Dah made the decision not to testify. Likewise, there is no evidence in the record to establish that Dah was somehow coerced or forced

16

into making this strategic decision. Under these circumstances, we do not find that the district court abused its discretion in denying Dah's posttrial motions.

Affirmed in part, reversed in part, sentence vacated, and remanded with directions.